

CHIEF FINANCIAL OFFICER
JEFF ATWATER
STATE OF FLORIDA



14-126904

MARC WACHTER AND ANASTASIA WACHTER

PLAINTIFF(S),

VS.

LEXINGTON INSURANCE COMPANY

DEFENDANT(S).

_____/

CASE #:    14-026326-CA-01
COURT:     CIRCUIT COURT
COUNTY:    MIAMI-DADE
DFS-SOP#: 14-126904

RECEIVED

OCT 22 2014

LEGAL DEPARTMENT

SUMMONS, CIVIL COVER SHEET, PETITION FOR DECLATORY RELIEF, NOTICE OF FILING EXHIBIT "A" IN SUPPORT PETITION, EXHIBIT

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida.  Said process was received in my office by MAIL on the 20th day of October, 2014 and a copy was forwarded by Electronic Delivery on the 22nd day of October, 2014 to the designated agent for the named entity as shown below.

LEXINGTON INSURANCE COMPANY
STEPHEN J PARIS
LEXINGTON INSURANCE COMPANY
100 SUMMER ST, 18TH FLOOR
BOSTON, MA 02110

* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Jeff Atwater*

Jeff Atwater
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

DAVID S. FARBER
SUITE 200
2199 PONCE DE LEON BLVD
MIAMI FL 33134

AMD

EXHIBIT
"A"

IN THE CIRCUIT COURT FOR THE 11ᵗʰ JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FLORIDA

Case No. 14-026326-CA-01

MARC WACHTER AND
ANASTASIA WACHTER

      Petitioners,

vs.

LEXINGTON INSURANCE
COMPANY,

      Respondent.
_____/

## S U M M O N S

**THE STATE OF FLORIDA:**

To All and Singular Sheriffs of said State:

**YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the complaint or petition in this action on Respondent:

      **Lexington Insurance Company**
      **100 Summer Street**
      **Boston, Massachusetts 02110**

      Each respondent is required to serve written defenses to the complaint or petition on **THE FARBER LAW FIRM**, Plaintiff's Attorneys, 2199 Ponce De Leon Boulevard, Suite 200, Miami, Florida, 33134, within twenty (20) days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on Petitioner's Attorneys or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition. WITNESS my hand and the Seal of the Court.

      HARVEY RUVIN
      As Clerk of said Court

OCT 1 5 2014

      By: _____
      Deputy Clerk

IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA), DISABLED PERSONS WHO, BECAUSE OF THEIR DISABILITIES, NEED SPECIAL ACCOMMODATION TO PARTICIPATE IN THIS PROCEEDING SHOULD CONTACT THE ADA COORDINATOR, NO LATER THAN SEVEN DAYS PRIOR TO THE PROCEEDINGS.

Filing # 19301749 Electronically Filed 10/13/2014 12:04:13 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statues section 25.075.

### I.    CASE STYLE

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Marc Wachter</u>
Plaintiff
vs.
<u>LEXINGTON INSURANCE COMPANY</u>
Defendant

### II.    TYPE OF CASE

- ☐ Condominium
- ☒ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999
  - ☐ Non-homestead residential foreclosure $250,00 or more
  - ☐ Other real property actions $0 - $50,000

- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more
- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.  **REMEDIES SOUGHT** (check all that apply):
- ☐ Monetary;
- ☐ Non-monetary
- ☒ Non-monetary declaratory or injunctive relief;
- ☐ Punitive

IV.  **NUMBER OF CAUSES OF ACTION:** (     )
(Specify)

    1

V.  **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐ Yes
- ☒ No

VI.  **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒ No
- ☐ Yes – If "yes" list all related cases by name, case number and court:

VII.  **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒ Yes
- ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _s/ David S. Farber_____      FL Bar No.: _370230___
      Attorney or party      (Bar number, if attorney)

_David S. Farber_____          _10/13/2014_
    (Type or print name)          Date

Filing # 19301749 Electronically Filed 10/13/2014 12:04:13 PM

IN THE CIRCUIT COURT FOR THE 11th JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FLORIDA

Case No.

MARC WACHTER AND
ANASTASIA WACHTER

    Petitioners,

vs.

LEXINGTON INSURANCE
COMPANY,

    Respondent.

_____/

## PETITION FOR DECLARATORY RELIEF

COMES NOW the Petitioners, MARC WACHTER and ANASTASIA WACHTER (hereinafter, Petitioners), by and through their undersigned counsel, and hereby sues LEXINGTON INSURANCE COMPANY (hereinafter, Respondent), and allege:

1.    This is an action for declaratory relief which concerns a value greater than Fifteen Thousand Dollars ($15,000.00), exclusive of attorneys' fee and costs; however, no monetary relief is sought herein as even if declaratory relief is found, no monies, based upon the relief sought, would flow to Petitioners based upon the relief granted.

2.    At all times material hereto, Petitioners, MARC WACHTER and ANASTASIA WACHTER, were or are residents of Miami-Dade County, Florida and are otherwise subject to the jurisdiction of this Court.

3.    At all times material hereto, Respondent, a surplus lines carrier, was authorized to, and did, sell and service residential insurance policies in Miami-Dade County, Florida, and throughout the State of Florida and is otherwise subject to the jurisdiction of this Court.

4.    At all times material hereto, in consideration of a premium paid by Petitioners, there was in full force and effect a certain residential insurance policy with Respondent providing

coverage to the residential property owned by Petitioners located at 310 E Rivo Alto Dr., Miami Beach, FL 33139 (hereinafter, the "Covered Property"), bearing policy number 60945874 (hereinafter, "Policy"). Please see attached, as Exhibit "A," a copy of the Policy.

5.     Before, however, the Policy was bound, Respondent commissioned BIS Insurance Services ("BIS") to assess the risk for it by interviewing the Petitioner, Marc Wachter, and evaluating the interior and exterior of the structure.

6.     On July 10, 2013, BIS reviewed the general appearance of the building, its physical premises, systems, updates, hazards, and protection and took interior and exterior photographs supporting its evaluation.

7.     Based upon BIS's finding that "[t]he upkeep and condition of the dwelling and premises is good" and that no recommendations are required, the Respondent bound Petitioners' Policy.

8.     Under the terms of the Policy, Respondent insured Petitioners against certain losses to Petitioners' Covered Property.

9.     On or about October 28, 2013 and/or December 15, 2013, while the Policy were in full force and effect, the Petitioners' property sustained damage caused by a covered peril under the Policy, to wit: interior water damage (hereinafter, "loss").

10.     Respondent assigned Claim No. 683-594922 to the loss.

11.     Fully expecting Respondent to cover and pay for Petitioners' loss, Respondent, without any reservation of rights or indication that it could or would deny coverage, requested Petitioners allow it to cut approximately 4ft x 4ft of wood flooring in Petitioners' bathroom.

12.     Since the area selected by Respondent, to wit: the bathroom, was, unbeknownst to Petitioners, negligently selected (as it was deemed insufficient for Respondent's purposes), Respondent cut another approximate 4ft x 4ft area of Petitioners' wood flooring in the middle of Petitioners' kitchen/dining room.

13.     Since Petitioners were of the belief that Respondent was attempting to stop the damage occurring to Petitioners' home and/or determine the extent of damage in order to pay for same, Petitioners allowed the removal of portions of Petitioners' continuous wood flooring.

14.     Respondent cut holes in Petitioners' floor, in two separate areas, to provide access to the crawl space under the Covered Property for its engineer, Mel A.Underwood, P.E. of Engineering Systems, Inc. ("ESI"), since the crawl space was too small to access through the exterior of the Covered Property.

15.     ESI determined that in its opinion, the damage it observed, was not caused by a "mechanical systems related leak" as Petitioners' contend, but rather due to lack of proper venting.  And, while ESI observed water damage to the wood flooring by the A/C handler, it discounted this as the cause of the loss because in its opinion, if the A/C malfunctioned, it would have caused swollen baseboards or the fact that the baseboards were not swollen means the baseboards were not exposed to the discharge of water from the A/C.

16.     Critically, ESI indicates that from "appraisal photos" taken in mid-June 2013, it visibly showed damaged wood flooring and that "[a] proper home inspection would have brought attention to the cupped flooring conditions, the venting and associated flooring moisture issues."

17.     As a result, Respondent denied coverage indicating that the loss was "long term in nature and occurred prior to the governing policy."

18.     All conditions precedent have been complied with, met or otherwise waived and/or Respondent's repudiation of coverage, by operation of law, relieves Petitioners from any further compliance with any and all conditions precedent.

19.     Petitioners have been obligated to engage the undersigned attorney for the prosecution of this action and are entitled to a reasonable attorneys fee pursuant to Fla. Stat. §627.428 and/or §626.9373.

## COUNT I

## CLAIM FOR DECLARATORY RELIEF.

20.    The Petitioners reallege and reaver all of the allegations contained in paragraphs 1-19 as more fully set forth herein.

21.    Petitioners' Covered Property suffered an A/C malfunction on or about October 28, 2013 which caused water to be discharged onto the ground.

22.    Petitioners' Covered Property, according to Respondent, suffered damage due to "inadequate crawl space venting, excessive humidity build-up, prolonged and repeated moisture drive exposure, and associated condensation formation, existing and occurring prior to the effective date of the governing aforementioned policy."

23.    Upon information and belief, Respondent undertook an obligation to adjust all losses with Petitioners.  Specifically, the policy states:

    "We will adjust all losses with you."

24.    The insurance for the building and other structures portions of the policy are based on "all risk" coverage, which provides coverage for all occurrences causing direct physical damage to the insured property, unless the occurrence is expressly excluded. The "all risk" provisions as they pertain to the insured building and separate structures are described under the section entitled "Perils Insured Against," and in pertinent part, states:

    "We insure against risk of direct physical
    loss to property described in Coverages A
    and B. We do not insure, however, for
    loss: c. Caused by: ..."

25.    The Policy does not contain an exclusion for damage to the insured dwelling caused by an accidental discharge of water from a A/C system or appliance.

26.    Respondent believes the Petitioners discharge of water is not covered based upon its interpretation of the Policy, as it relates to the facts of the subject loss as hereinbefore described due to its application of certain policy provisions.

27.     Petitioners believe, while not accepting Respondent's unilateral interpretation as the cause of loss as not being covered, that the accidental discharge of water from A/C handler is a covered event and that Respondent has an affirmative obligation to adjust and cover their loss, excluding damage from any non-covered peril (if any).

28.     Respondent believes that the damage it observed was caused by humidity which is "long term in nature and occurred prior to the governing policy" and in support offers the following exclusion for its denial of coverage:

> 2.      We do not insure, however, for loss:
>
> (5)      Constant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insured" and is hidden within the walls or ceilings or beneath the floors or above the ceilings or a structure.

29.     Respondent fails to consider that even if its conclusion as to the cause of the loss is correct, the loss would still be covered as it was "unknown to all insureds" and was "hidden" "beneath the floors." Moreover, according to Respondent's inspection before the Policy was bound, "[t]he upkeep and condition of the dwelling and premises is good" and no recommendations were required.

30.     At minimum, Respondent's destructive testing (cutting two access holes) when the loss, according to its expert, EIS, was visible and determinable before access based upon his review of the June 2013 photographs, and coverage for this must be extended for the damages caused and repairs/replacements required.

31.     Also, Respondent is required, if the floor is continuous, to adhere to Florida Statute §626.9744, entitled "Claim settlement practices relating to property insurance," which requires, in claims involving damage to floors, to provide:

> "(2) When a loss requires replacement of items and the replaced items do not match in quality, color, or size, the insurer shall make

> reasonable repairs or replacement of items in adjoining areas. In determining the extent of the repairs or replacement of items in adjoining areas, the insurer may consider the cost of repairing or replacing the undamaged portions of the property, the degree of uniformity that can be achieved without such cost, the remaining useful life of the undamaged portion, and other relevant factors."

Florida Statute §626.9744 (emphasis supplied)

32.    As a result of Respondent's actions or inactions, Petitioners believe that Respondent is required to put Petitioners back in their pre-loss condition, by extending coverage for their loss and all attendant repairs associated with the same.

33.    There is no policy provision which allows Respondent to take this course of conduct to deny Petitioners coverage under the above circumstances.

34.    Therefore, Petitioners believe that Respondent, having a duty under the Policy to adjust the loss, is obligated to inspect the damage and sort out how much is to be paid on account of the covered portion of the loss from the A/C handler leak and/or the damage it unnecessarily caused to the continuous flooring consistent with Florida Statute §626.9744 (especially if the "appraisal photos" taken in mid-June 2013, as stated by EIS, showed visible damaged to their continuous wood flooring[1]) and/or cover the cause of loss identified by Respondent as it was "unknown to all insureds" and was "hidden" "beneath the floors" which was also not apparent to Respondent when the risk the bound as "[t]he upkeep and condition of the dwelling and premises is good" and no recommendations made.

35.    Although Petitioners do not concede that any portion of the damage should be excluded, Petitioners, given Respondent's denial of coverage under these circumstances, are in doubt or are uncertain as to the existence or non-existence of Petitioners' rights to coverage under the Policy and they have an actual, practical and present need for a declaration of their rights by this Court.

---

[1] Clearly, Respondent had the ability, if this was true, either to not accept the risk (which it did) or because the damage was visible and the condition would have been allegedly apparent to a home inspector, not cut 4ft x 4ft access holes in Petitioners' floor necessitating the complete replacement of Petitioners flooring.

36.    The declaratory relief process sought in this action is not extraordinary and is consistent with the Supreme Court of Florida decision in *Higgins v. State Farm* 894 So. 2d 5 (2004), in which the court held that in conformance with the recent trend of the law, declaratory judgment statutes have now been construed to authorize an action to declare the existence or nonexistence of any  right, or of *"any fact upon which the existence or nonexistence of such ... right does  or may depend, and whether such ... right.. now exists or will arise in the future."*

37.    Therefore, in this action, Petitioners have done exactly what the Florida Supreme Court in *Higgins* reasoned should be done.  The Petitioners have brought suit on the insurance policy for a determination of coverage. Once coverage is established, if there is a disagreement as to the amount of the loss, appraisal or other remedy may be warranted.

38.    As a direct and proximate result of the foregoing conflicting positions of the parties, there is an  actual bona-fide controversy between the parties that requires judicial interpretation as to the existence of a covered loss and application of Florida Statute §626.9744, and accordingly, Petitioners seek a declaration as to Petitioners' rights relative to coverage of the loss, adjustment of their loss, and should the parties disagree, a potential compelling of the appraisal process.

39.    In essence, the purpose of this declaratory decree action is to obtain a judicial interpretation of the Policy, as it relates to the facts involved herein, that determines that there has been a covered loss. Without such a declaratory decree, Petitioners are unable to obtain insurance benefits under their Policy or be entitled to an appraisal process to determine the amount of the loss, in the event that there is a disagreement as to the amount of the covered loss.

WHEREFORE, Petitioners request this Honorable Court as follows:

A.    to declare that the loss caused by the A/C is a covered loss under the Policy subject to Florida Statute §626.9744 and/or;

B.    to declare that the loss caused by Respondent's destructive testing to Covered Property is a covered loss under the Policy subject to Florida Statute §626.9744 and/or;

C.    to declare that the loss as determined by Respondent is covered as it was "unknown to all insureds" and was "hidden" "beneath the floors;"

D.    to declare that Respondent must provide coverage for the loss for continuous flooring and all repair/replacements consistent with the Policy and Florida Statute §626.9744;

E.    to compel Respondent to properly adjust the loss and/or submit to appraisal if Respondent disagrees with Petitioners' evaluation of the loss;

F.    to award Petitioners reasonable attorney's fees pursuant to Fla. Stat. §627.428 and/or §626.9373;

G.    to award Petitioners' court costs; and,

H.    to declare such other and further orders or decrees as justice may require and as may seem just and proper to this Court.

## DEMAND FOR JURY TRIAL

Without waiver of Petitioners' potential request for appraisal, Plaintiff hereby demands a trial by jury for all issues triable before a jury.

DATED this 10th day of October, 2014.

Respectfully submitted by,

THE FARBER LAW FIRM
Merrick Plaza
2199 Ponce De Leon Blvd., Suite 200
Coral Gables, FL 33134
Telephone: (305) 774-0134
Facsimile:  (305) 774-0135
Email: dfarber@dfarberlaw.com


By: /s/ David S. Farber
       David S. Farber
       FBN: 0370230

Filing # 19370226 Electronically Filed 10/14/2014 03:42:01 PM

IN THE CIRCUIT COURT FOR THE 11th JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FLORIDA

Case No. 14-026326-CA-01

MARC WACHTER AND
ANASTASIA WACHTER

     Petitioners,

vs.

LEXINGTON INSURANCE
COMPANY,

     Respondent.

_____/

### NOTICE OF FILING EXHIBIT "A" IN SUPPORT OF PETITION

     COMES NOW the Petitioners, MARC WACHTER and ANASTASIA WACHTER, by and

through their his undersigned counsel, and hereby file the attached Exhibit "A" In Support of Petition filed on

October 13th, 2014.

### CERTIFICATE OF SERVICE

     WE HEREBY CERTIFY that a true and correct copy of the foregoing was to be served upon

Respondent by the Insurance Commissioner of the State of Florida.

     Respectfully submitted by,

     **THE FARBER LAW FIRM**
     Merrick Plaza
     2199 Ponce De Leon Blvd., Suite 200
     Coral Gables, FL 33134
     Telephone: (305) 774-0134
     Facsimile:  (305) 774-0135
     Email: dfarber@dfarberlaw.com


     By: /s/ David S. Farber_____
          David S. Farber
          FBN: 0370230

# EXHIBIT "A"

| *Elite* | Lexington Insurance Company <br> HO3 Homeowner Declaration Page | — Insured Copy — |
| --- | --- | --- |

**Policy Number:** 60945874

**Renewal of Policy Number:** New

**Name of Insured and Mailing Address:**
Wachter, Marc
Wachter, Anastasia
1691 Michigan Avenue #3
MIAMI BEACH, FL 33139-1250

**Broker Name and Address:**
Hull & Company, Inc
1815 Griffin Road, Suite 300
Dania Beach, FL 33004

**Policy Term:** 07/02/2013

**Expiration:** 07/02/2014    12:01 AM Standard Time at the Insured's residence premises

The residence premises covered by this policy is located at the above address, Unless otherwise stated. 310 E RIVO ALTO DR, MIAMI BEACH FL 33139-1250

Insurance is provided only with respect to those special limits of liability applicable thereto:

| Coverage Part 1 - Homeowners | | Coverage Part 2 — Personal Umbrella | |
| --- | --- | --- | --- |
| - Coverage A: | $500,000 | - Umbrella Limit | $0 |
| - Coverage B: | $50,000 | - Self Insured Retention | $0 |
| - Coverage C: | $25,000 | **Coverage Part 3 — Excess Flood** | |
| - Coverage D: | $50,000 | - Building | $0   Excess of   $250,000 |
| - Loss Assessment: | $1,000 | - Contents | $0   Excess of   $100,000 |
| - Ordinance or Law: | 10% | **Coverage Part 4 — Scheduled Property** | |
| - Coverage E: | $300,000 | - Total Scheduled Property | $0 |
| - Coverage F: | $1,000 | | |

| | Annual Premium: | $2,233.00 |
| --- | --- | --- |

**Homeowner Deductibles**

| | | | |
| --- | --- | --- | --- |
| All Other Perils: | $2,500 | Policy Premium: | $2,233.00 |
| Wind and Hail: | Excluded | Inspection Fee: | $200.00 |
| Earthquake: | Excluded | Policy Fee: | $35.00 |
| | | Surplus Lines Tax: | $123.40 |
| | | Stamping Fee: | $4.94 |
| | | FL Catastrophe Hurricane Fund | $32.08 |
| | | CPIC | $24.68 |
| Special: None | $N/A | | |
| Special: None | $N/A | Emergency Fund Fee: | $2.00 |
| | | Total Due: | $2,655.10 |

**Minimum Earned Premium:** $558

**Sub Broker Information**
Name: South Beach Ins. Agency, Inc.
Addr 1: PO Box 398628
Addr 2:
City, State Zip: Miami Beach, FL 33239

**Homeowners Rating Information**

| | | | |
| --- | --- | --- | --- |
| Territory: | 30 | Protection Class: | 1 |
| County: | MIAMI-DADE-FL | | |
| Construction: | Masonry | | |
| EQ zone: | NA | Yr Built: 1940 | |

Forms and Endorsements made part of this policy at time of issuance: Please see Schedule of Forms and Endorsements

This declaration page with policy provisions and endorsements, if any, issued to form a part, thereof, completes the above numbered homeowner's policy.

Countersignature Date: 07/03/2013

Countersignature: _James S Hollinworth_   A092313

Authorized Representative: _Jon A Crain_

*Lex Elite 11/00*

**Policy Number:** 60945874
**Insured:** Wachter, Marc

| Mortgagee 1 | Mortgagee 2 |
|---|---|
| GIBRALTAR PRIVATE BANK & TRUST COMPANY<br>ISAOA/ATIMA<br>55 Alhambra Plaza - 6th Floor<br>Coral Gables, FL 33134<br>Loan #: 104752 | |
| **Mortgagee 3** | |
| | |

Page 2 of 2

POLICY NUMBER: 60945874
Effective Date:        07/02/2013                                    Date Issued: 07/03/2013

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Lex Elite 11/00 | Declaration Page |
| 78052 01 13 | AIG Property Casualty U.S. Privacy and Data Security Notice |
| FL ORD ED 04 96 | H03 Florida Disclosure Notice (FL only) |
| FL REJ ED 04 96 | H03 Florida Rejection - Ordinance and Law (FL ONLY) |
| HO 00 03 10 00 | Homeowner 3 Special Form |
| HO 04 16 10 00 | Premises Alarm/Fire Protection System |
| HO 04 35 10 00 | Loss Assessment Coverage |
| HO 04 90 10 00 | Personal Property Replacement Cost |
| HO 04 96 10 00 | Home Day Care Exclusion |
| HO 05 80 10 00 | Property Remediation/Limited Liability for Escaped Fuels H03 |
| LEX 00 01 07 06 | Animal Exclusion |
| LEX 00 04 08 11 | Lexington Standard Policy Conditions |
| LEX 00 14 09 08 | Important Flood Notice.. |
| LEX 00 63 04 05 | Mechanical Breakdown |
| LEX 00 81 04 07 | Windstorm, Named Storm, or Hail Exclusion Acknowledgement Letter |
| LEX 00 82 04 06 | Maximum Payable Amount If Other Insurance |
| LEX 00 106 05 11 | Lex Special Provisions Florida |
| LEX 00 141 09 08 | Amendment to Fair Rental Value Endorsement |
| LEX 00 159 03 09 | Swimming Pool Under Coverage B Exclusion |
| LEX 00 168 09 09 | Specific Building Materials Exclusion |
| LEX 00 169 09 09 | Inflation Guard · |
| LEX 01 07 11 04 | Residence Premises Only Coverage |
| LEX 04 33 11 04 | Limited Mold Related Coverage |
| LEX 04 94 04 07 | Windstorm, Named Storm, or Hail Exclusion |
| LEX 05 80 11 04 | Advisory Notice to Policyholders - Explanatory Memo |
| LEX 17 33 11 04 | Unit Owners Rented to Others |
| 89644 07 05 | OFAC Advisory Notice |
| Claims Policyholder Notice | What to Do if You Suffer a Loss to Your Home and Property |

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except · model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in a. or b. above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. and b. above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

 Copyright, Insurance Services Office, Inc., 1999 HO 00 03 10 00

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

**SECTION I – PROPERTY COVERAGES**

**A. Coverage A – Dwelling**

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

**B. Coverage B – Other Structures**

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**C. Coverage C – Personal Property**

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

4. **Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flare-craft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device. Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

**D. Coverage D – Loss Of Use**

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2. Fair Rental Value**

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than two weeks.

**4. Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

**1. Debris Removal**

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in B.4. under Section I – Conditions.

3. **Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

**7. Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph P. Policy Period under Section I – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage C;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

    (1) To covered property which results be-
cause the glass or safety glazing mate-
rial has been broken, except as pro-
vided in a.(3) above; or

    (2) On the "residence premises" if the
dwelling has been vacant for more than
60 consecutive days immediately before
the loss, except when the breakage re-
sults directly from earth movement as
provided in a.(2) above. A dwelling be-
ing constructed is not considered va-
cant.

c. This coverage does not increase the limit of
liability that applies to the damaged prop-
erty.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances,
carpeting and other household furnishings, in
each apartment on the "residence premises"
regularly rented or held for rental to others by
an "insured", for loss caused by a Peril Insured
Against in Coverage C, other than Theft.

This limit is the most we will pay in any one
loss regardless of the number of appliances,
carpeting or other household furnishings in-
volved in the loss.

This coverage does not increase the limit of li-
ability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liabil-
ity that applies to Coverage A for the in-
creased costs you incur due to the en-
forcement of any ordinance or law which
requires or regulates:

    (1) The construction, demolition, remodel-
ing, renovation or repair of that part of a
covered building or other structure
damaged by a Peril Insured Against;

    (2) The demolition and reconstruction of the
undamaged part of a covered building
or other structure, when that building or
other structure must be totally demol-
ished because of damage by a Peril In-
sured Against to another part of that
covered building or other structure; or

    (3) The remodeling, removal or replace-
ment of the portion of the undamaged
part of a covered building or other struc-
ture necessary to complete the remodel-
ing, repair or replacement of that part of
the covered building or other structure
damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or
law coverage to pay for the increased costs
you incur to remove debris resulting from
the construction, demolition, remodeling,
renovation, repair or replacement of prop-
erty as stated in a. above.

c. We do not cover:

    (1) The loss in value to any covered build-
ing or other structure due to the re-
quirements of any ordinance or law; or

    (2) The costs to comply with any ordinance
or law which requires any "insured" or
others to test for, monitor, clean up, re-
move, contain, treat, detoxify or neutral-
ize, or in any way respond to, or assess
the effects of, pollutants in or on any
covered building or other structure.

Pollutants means any solid, liquid,
gaseous or thermal irritant or contami-
nant, including smoke, vapor, soot,
fumes, acids, alkalis, chemicals and
waste. Waste includes materials to be
recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, in-
cluding mausoleums, on or away from the
"residence premises" for loss caused by a Peril
Insured Against under Coverage C.

This coverage does not increase the limits of
liability that apply to the damaged covered
property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B –
Other Structures**

1. We insure against risk of direct physical loss to
property described in Coverages A and B.

2. We do not insure, however, for loss:

a. Excluded under Section I – Exclusions;

b. Involving collapse, except as provided in
E.8. Collapse under Section I – Property
Coverages; or

c. Caused by:

    (1) Freezing of a plumbing, heating, air
conditioning or automatic fire protective
sprinkler system or of a household ap-
pliance, or by discharge, leakage or
overflow from within the system or ap-
pliance caused by freezing. This provi-
sion does not apply if you have used
reasonable care to:

        (a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use, reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

  (a) Fence, pavement, patio or swimming pool;

  (b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

  (c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

  (d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

  (a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

  (b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

  (a) Wear and tear, marring, deterioration;

  (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

  (c) Smog, rust or other corrosion, or dry rot;

  (d) Smoke from agricultural smudging or industrial operations;

  (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

  (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

  (g) Birds, vermin, rodents, or insects; or

  (h) Animals owned or kept by an "insured".

Exception To c.(6)

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

(1) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

1. **Fire Or Lightning**

2. **Windstorm Or Hail**

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

   This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**

   a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   b. This peril does not include loss caused by theft:

      (1) Committed by an "insured";

      (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

      (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

      (4) That occurs off the "residence premises" of:

         (a) Trailers, semitrailers and campers;

         (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

         (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

10. **Falling Objects**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet**

    This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

Copyright, Insurance Services Office, Inc., 1999

12. **Accidental Discharge Or Overflow Of Water Or Steam**

   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   b. This peril does not include loss:

      (1) To the system or appliance from which the water or steam escaped;

      (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing; .

      (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

      (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   d. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

   This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**

   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain all systems and appliances of water.

      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   1. **Ordinance Or Law**

      Ordinance Or Law means any ordinance or law:

      a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I – Property Coverages;

      b. The requirements of which result in a loss in value to property; or

      c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

      This Exclusion A.1. applies whether or not the property has been physically damaged.

   2. **Earth Movement**

      Earth Movement means:

      a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion A.2. does not apply to loss by theft.

3. **Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

5. **Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I – Conditions.

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in 6. above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

D. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

E. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

F. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

G. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

   Copyright, Insurance Services Office, Inc., 1999   HO 00 03 10 00

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs E. Appraisal, G. Suit Against Us and I. Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

B. "Watercraft Liability"

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

   (i) You declare them at policy inception; or

   (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (c) and (d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

C. "Aircraft Liability"

This policy does not cover "aircraft liability".

D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages E and F do not apply to the following:

1. Expected Or Intended Injury

   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. "Business"

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion E.2. does not apply to:

      (1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. **Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. **War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. **Coverage E – Personal Liability**

Coverage E does not apply to:

1. **Liability:**

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

a. To repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

a. Occurs off the "insured location"; and

b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

3. From any:

a. Nuclear reaction;

b. Nuclear radiation; or

c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to C. Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.


**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (2) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C. Damage To Property Of Others under Section II – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

POLICY NUMBER: 60945874

HOMEOWNERS
HO 04 35 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS ASSESSMENT COVERAGE

### SCHEDULE*

| |
|---|
| A.  "Residence Premises" – Additional Amount Of Insurance: $1,000 |
| B.  Additional Locations<br>  Location Of Unit And Limit Of Liability |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**1. Additional Insurance -- Residence Premises**

We will pay, up to the additional amount of insurance shown in A. in the Schedule above, for one or more assessments arising out of a single loss covered under:

a. Section I Additional Coverage E.7. Loss Assessment (This is Additional Coverage C.7. in Form HO 00 04 and D.7. in Form HO 00 06.);

b. Section II – Additional Coverage D. Loss Assessment; or

c. Both Section I and Section II.

**2. Additional Locations**

We will pay, up to the limit of liability shown in B. in the Schedule, your share of covered loss assessments as described in Section I Additional Coverage E.7. and Section II -- Additional Coverage D. of the policy, arising out of the premises listed above. This is the most we will pay for one or more assessments arising out of a single loss covered under:

a. Either Section I Additional Coverage E.7. Loss Assessment or Section II – Additional Coverage D. Loss Assessment; or

b. Both Section I and Section II.

**3. Special Limit**

We will not pay more than $1,000 of your assessment per unit that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

**4. Section II – Exclusion**

Section II – Exclusion F.1.a. does not apply to this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1999

HOMEOWNERS
HO 04 90 10 00

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY REPLACEMENT COST
# LOSS SETTLEMENT

## A. Eligible Property

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage C; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (2) Smoking implements; or

      (3) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

## B. Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

## C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in A. above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage C, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in A.2.a. - f. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

ENDORSEMENT #

This endorsement, effective 12:01 A.M., 07/02/2013
Forms a part of Policy No.: 60945874
Issued to: Wachter, Marc
By: Lexington Insurance Company

## (1) SERVICE OF SUIT AND (2) AUTHORIZATION CLAUSES

This endorsement modifies insurance provided by the policy:

Both conditions set forth below apply to the entire policy, including all Coverage Parts:

1. **Service of Suit**

   In the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110 or his or her representative, and that in any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

   Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this policy of insurance, and hereby designate the above Counsel as the person to whom said officer is authorized to mail such process or a true copy thereof.

2. **Authorization Clause**

   IN WITNESS WHEREOF, the Insurance Company identified on the Declarations has caused this policy to be signed by its President, Secretary and a duly authorized representative of the Insurance Company.

_David J. Bresnahan_                    _David_

PRESIDENT                               SECRETARY

LEX 00 04 08 11

Policy Number 60945874                          Homeowners LEX 00 63 04 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MECHANICAL BREAKDOWN COVERAGE

## DEFINITIONS

The following definitions are added:
1. "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be a mechanical breakdown, including rupture or bursting caused by centrifugal force.
2. "Computer equipment" means covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.
3. "Covered equipment"
   a. "Covered equipment" means covered property:
      (1)   that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or
      (2)   which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.
   b. None of the following is "covered equipment":
      (1)   structure, foundation, cabinet, compartment or air supported structure or building;
      (2)   insulating or refractory material;
         (3)   sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;
         (4)   water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
            (5)   "vehicle"or any equipment mounted on a "vehicle";
      (6)   satellite, spacecraft or any equipment mounted on a satellite or spacecraft; or
      (7)   dragline, excavation or construction equipment.
4. "Data" means information or instructions stored in digital code capable of being processed by machinery.
5. "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.
6. "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.
7. "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."
8. "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.
   However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

## SECTION 1 - PERILS INSURED AGAINST

1. We will pay for direct physical damage to covered property, described in Coverages A, B and C, that is the direct result of an "accident."

Includes copyrighted material of Insurance Services Office, Inc., with its permission.                          1

Policy Number 60945874                          Homeowners LEX 00 63 04 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MECHANICAL BREAKDOWN COVERAGE

## DEFINITIONS

The following definitions are added:

1.  "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be a mechanical breakdown, including rupture or bursting caused by centrifugal force.
2.  "Computer equipment" means covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.
3.  "Covered equipment"
    a.  "Covered equipment" means covered property:
        (1)  that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or
        (2)  which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.
    b.  None of the following is "covered equipment":
        (1)  structure, foundation, cabinet, compartment or air supported structure or building;
        (2)  insulating or refractory material;
            (3)  sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;
            (4)  water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
                (5)  "vehicle"or any equipment mounted on a "vehicle";
        (6)  satellite, spacecraft or any equipment mounted on a satellite or spacecraft; or
        (7)  dragline, excavation or construction equipment.
4.  "Data" means information or instructions stored in digital code capable of being processed by machinery.
5.  "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.
6.  "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.
7.  "One accident" means: if an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."
8.  "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.
    However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

## SECTION 1 - PERILS INSURED AGAINST

1.  We will pay for direct physical damage to covered property, described in Coverages A, B and C, that is the direct result of an "accident."

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          1

Policy Number  60945874                          Homeowners LEX 00 63 04 05

2.  The following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

    a.  Expediting Expenses
        With respect to your damaged covered property, we will pay, up to $25,000, the reasonable extra cost to:
        (1)  make temporary repairs; and
        (2)  expedite permanent repairs or permanent replacement.

    b.  Hazardous Substances
        We will pay for the additional cost to repair or replace covered property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.
        As used in this coverage, additional costs mean those beyond what would have been payable under this Mechanical Breakdown Coverage had no "hazardous substance" been involved.
        The most we will pay for loss, damage or expense under this coverage is $25,000.

    c.  Computers In The Dwelling
        We will pay for loss, damage or expense caused by or resulting from an "accident" to "computer equipment" located in the dwelling.
        The most we will pay for loss, damage or expense under this coverage $25,000.

    d.  Data Restoration
        We will pay for your reasonable and necessary cost to research, replace and restore lost "data."
        The most we will pay for loss, damage or expense under this coverage is $25,000.

3.  The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Liability in the Declarations. Coverage provided under this endorsement does not provide an additional amount of insurance.

## SECTION 1 - EXCLUSIONS

All exclusions in Section 1 of the policy to which this endorsement is attached apply except as modified below and to the extent that coverage is specifically provided by this additional coverage Mechanical Breakdown.

1.  We will not pay under this endorsement for loss, damage or expense caused by or resulting from:
    a.  any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense;
    b.  any of the following tests:
        a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment;
    c.  change in temperature or humidity, whether or not resulting from an "accident";
    d.  contamination by a refrigerant resulting from an "accident";
    e.  depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. But if an "accident" results, we will pay for the resulting loss, damage or expense.

2.  We will not pay under this endorsement for any loss of income or any loss described under Coverage D.

Policy Number  60945874                          Homeowners LEX 00 63 04 05

3.    With respect to this coverage, we will also not pay for an "accident" caused by or resulting from:
      fire; lightning; windstorm or hail; explosion (including steam explosion); artificially generated
      electrical current that disturbs electrical devices appliances or wires; smoke; aircraft or vehicles;
      riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet;
      freezing; collapse; flood or earth movement.

4.    We will not pay for loss, damage or expense caused directly or indirectly by the following,
      whether or not caused by or resulting from an "accident": Any mold, fungus, mildew or yeast,
      including any

5.    spores or toxins produced by or emanating from such mold, fungus, mildew or yeast. This
      includes, but is not limited to, costs arising from clean up, removal, or abatement of such mold,
      fungus, mildew or yeast, spores or toxins.

## SECTION 1 - CONDITIONS

The following condition is added:
              Environmental, Safety and Efficiency Improvements
      If "covered equipment" requires replacement due to an "accident," we will pay your additional cost
      to replace with equipment that is better for the environment, safer or more efficient than the
      equipment being replaced.
      However, we will not pay more than 125% of what the cost would have been to repair or replace
      with like kind and quality. This condition does not increase any of the applicable limits. This
      condition does not apply to any property to which actual cash value applies.

## ACKNOWLEDGEMENT LETTER

Prospective Insured: Marc Wachter and Anastasia Wachter
Address: 310 E RIVO ALTO DR, MIAMI BEACH FL 33139-1250

We have provided you with a quotation for a homeowners policy for the above referenced address *without coverage* for the *perils of windstorm, named storm, or hail.*

By signing below, you acknowledge all of the following:

(1)   Your homeowners policy will not provide coverage for the perils of windstorm, named storm, and/or hail, including any other event occurring concurrently or in any sequence with such perils, and

(2)   You have read and understand the Windstorm, Named Storm or Hail Exclusion (hereinafter, the "Exclusion") which is attached to this letter, and

(3)   You understand that the Exclusion will be attached to and made part of your homeowners policy.

I have read this entire acknowledgement letter, understand the statements contained herein, and agree to its terms.

_____
Name

_____
Date

_____
Name

_____
Date

LEX 00 81 04 07

LEX 00 82 04 06

This endorsement, effective 12:01 A.M., 07/02/2013
Forms a part of Policy No.: 60945874
Issued to: Wachter, Marc
By: Lexington Insurance Company

## MAXIMUM PAYABLE AMOUNT IF OTHER INSURANCE PROVIDES COVERAGE FOR A PERIL NOT COVERED BY THIS POLICY

This endorsement modifies insurance provided by the policy:

Paragraph S. is added to SECTION I – CONDITIONS as follows:

S. **Maximum Payable Amount If Other Insurance Provides Coverage for a Peril Not Covered by this Policy**

1. If a dwelling is a "total loss" and the loss or damage to the dwelling is attributable to two perils, one of which is covered under this policy and another of which is covered by another policy or policies of insurance, then:

   a. the most we will pay under Coverage A – Dwelling is the limit of liability for Coverage A shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the dwelling, and

   b. the most we will pay under Coverage C – Personal Property is the limit of liability for Coverage C shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the personal property (or if a special limit of liability applies to your personal property, then the most we will pay under Coverage C – Personal Property for such personal property is the special limit shown in the policy minus the amount paid or payable under such other insurance policy or policies for such personal property).

   However, we might pay less than the aforementioned maximum amount(s) under subparagraphs a. or b. above if the loss or damage to the dwelling or personal property, as applicable, attributable to the covered peril is less than the applicable maximum amount(s).

2. If an other structure covered under this policy is a "total loss" and the loss or damage to such other structure is attributable to two perils, one of which is covered under this policy and another of which is covered by another policy or policies of insurance, then the most we will pay under Coverage B – Other Structures is the limit of liability for Coverage B shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the other structure. However, we might pay less than the aforementioned maximum amount if the loss or damage to the other structure attributable to the covered peril is less than the applicable maximum amount.

As used in herein, "total loss" means that:

1. the dwelling or other structure, as applicable, is completely destroyed regardless of whether any damage is done to the foundation or slab, or

2. the dwelling or other structure, as applicable, is in such condition after the loss that the standard method of rebuilding or repairing the dwelling or other structure, as applicable, is to raze the structure except for the foundation or slab or including all or part of the foundation or slab and rebuild the entire structure, whether the structure is actually rebuilt or not.

All other terms and conditions of the policy remain the same.

LEX 00 82 04 06

LEX 00 106 05 11
HOMEOWNERS LEX

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS - FLORIDA

The following provisions supersede any contrary provisions of the Homeowners 3 – Special form, Homeowners 4 - Contents Broad Forms and Homeowners 6 - Unit Owners Form where permitted by law.

**DEDUCTIBLE CLAUSE** – is deleted and replaced with the following:

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I – Property Coverages that exceed the applicable deductible amount or percentage shown in the Declarations.  Under no circumstance shall the applicable deductible be less than the All Other Peril (AOP) deductible shown in the Declarations.

**SECTION I – PROPERTY COVERAGES**

   B.  **COVERAGE B – Other Structures.** Subparagraph 3. of Paragraph B. in Form HO 00 03 is deleted and replaced by the following:

   3.  The limit of liability for this coverage shall not exceed the amount shown in the Declarations.

**SECTION I – PERILS INSURED AGAINST**

   A.  **Coverage A – Dwelling And Coverage B – Other Structures**  Subparagraph 2.c.(1) of Paragraph A. in Form HO 00 03 is deleted and replaced by the following:

   (1)  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.  This provision does not apply if you have used reasonable care to:

   (a)  Maintain heat in the building; or

   (b)  Shut off the water supply and drain all systems and appliances of water;

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   Subparagraph 2.c.(5) of Paragraph A. in Form HO 00 03 is deleted and replaced by the following:

   (5)  Constant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insured" and is hidden within the walls or ceilings or beneath the floors or above the ceilings or a structure

   12. **Accidental Discharge Or Overflow of Water Or Steam** Subparagraph b.(5) in Form HO 00 06 is deleted and replaced by the following:

   (5)  To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings or a structure.

LEX 00 106 05 11
SC

Page 1 of 4

Subparagraph b.(4) of Paragraph A. in Form HO 00 04 is deleted and replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

The following peril is added:

**SINKHOLE COLLAPSE**

This peril means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

Section I – Earth Movement Exclusion 2. does not apply to this peril.

**SECTION I – EXCLUSIONS**

Subparagraph 10., Act of Terrorism is added to Paragraph A. in Form HO 00 03 (Paragraph 10., Act of Terrorism is added to SECTION I – EXCLUSIONS in Forms HO 00 04 & HO 00 06) as follows:

10. Act of Terrorism

Act of Terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

It is hereby understood and agreed, that notwithstanding any provision to the contrary, it is agreed that this policy excludes, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with biological, chemical, or nuclear pollution or contamination arising out of any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

The policy also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any biological, chemical, or nuclear pollution or contamination arising out of an act of terrorism.

Nothing in this exclusion shall be construed to exclude loss, damage or cost or expense of whatsoever nature arising out of fire following any nuclear incident.

**SECTION I - CONDITIONS**

A. Insurable Interest and Limit Of Liability is deleted and replaced by the following:

A. Insurable Interest and Limit Of Liability

1. Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

2. Sub-limit Of Liability
Subject to Paragraph 1. above, our total liability under Coverage E for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sub-limit is within, but does not increase the Coverage E limit of liability.

3. The limit of liability in 1. above and in sub-limit in 2. above apply regardless of the number of "insureds," claims made or persons injured.

4. Our total limit of liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

Subparagraph 2.f. is added to Paragraph C., Loss Settlement in Form HO 00 03 (Subparagraph 1. in Form HO 00 04; Subparagraph 2.c. in HO 00 06) as follows:

f. If, at the time of loss, the building(s) under Coverage A or B are being repaired, renovated, rebuilt or under construction, the maximum amount of insurance on the damaged building will be the proportion of the value of the building that the actual cash value of the building, on that date, bears to the value when completed. You and we agree that, for insurance purposes only, the value of the building is the amount shown on the Declarations.

Paragraph Q., Concealment Or Fraud in Form HO 00 03 & HO 00 06 (Paragraph P. in Form HO 00 04) is deleted and replaced with the following:

Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance. In addition to not providing coverage, we at our option may choose to void the entire policy.

## SECTION II - EXCLUSIONS

E. Coverage E – Personal Liability and Coverage F – Medical Payments To Others  Subparagraph 1. of Paragraph E. is deleted and replaced with following:

Coverages E and F do not apply to the following:

1. Expected or Intended Injury

"Bodily injury" or "property damage" which is reasonably expected or intended from the standpoint of the "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

The reasonable person standard applies even if the "insured" lacked the mental capacity to formulate an intent or expectation.

E. Coverage E – Personal Liability and Coverage F – Medical Payments To Others  Subparagraph 9. is added to Paragraph E. as follows:

Coverages E and F do not apply to the following:

9. Punitive or Exemplary Damages

Punitive or exemplary damages alleged in any claim or suit nor do we have any obligation to pay any costs, interests, or damages attributable to such punitive or exemplary damages.

## SECTION II – CONDITIONS

Paragraph J., **Concealment Or Fraud** is deleted and replaced with the following:

**J.  Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1.  Intentionally concealed or misrepresented any material fact or circumstance;

2.  Engaged in fraudulent conduct; or

3.  Made false statements;

relating to this insurance.  In addition to not providing coverage, we at our option may choose to void the entire policy.

## SECTION I AND II – CONDITIONS

Paragraph C., **Cancellation** and Paragraph D., **Nonrenewal** are deleted and replaced with the following new paragraphs:

**C.  Cancellation**

1.  You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect.  This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    a.  When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    b.  When this policy has been in effect for less than 90 days and is not a renewal with us, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect.

    c.  When this policy has been in effect for 90 days or more, or at any time if it is a renewal with us, we may cancel:

        (1)  If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

        (2)  If the risk has changed substantially since the policy was issued.

        This can be done by letting you know at least 45 days before the date cancellation takes effect.

    d.  When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 45 days before the date cancellation takes effect.

3.  If this policy is canceled, we will send you any premium refund due.  If we cancel, the refund will be pro rata.  If you cancel, the earned premium will be calculated on a pro rata basis subject to the Minimum Earned Premium shown in the Declarations.

    Your failure to make timely payment of premium shall be considered a request by you for us to cancel this policy on your behalf.  In the event of such cancellation for non-payment of premium, the Minimum Earned Premium shall be due and payable, provided, however, such cancellation shall be rescinded if you remit and we receive the full policy premium within 10 days after the date of issuance of the cancellation notice.

4.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5.  The cancellation will be effective even if we have not made or offered a refund.

**D.  Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

LEX 00 106 05 11
SC

Page 4 of 4

LEX 00 141 09 08

This endorsement, effective 12:01 A.M., 07/02/2013
Forms a part of Policy No.: 60945874
Issued to: Wachter, Marc
By: Lexington Insurance Company

## AMENDMENT TO FAIR RENTAL VALUE ENDORSEMENT
### (Applicable to HO 00 03, HO 00 04, and HO 00 06)

This endorsement modifies insurance provided by the policy:

I.   For HO 00 03:   Subparagraph 2., Fair Rental Value of Paragraph D. Coverage D – Loss of Use (SECTION I – PROPERTY COVERAGES) is deleted in its entirety and replaced with the following:

For HO 00 04:   Subparagraph 2., Fair Rental Value of Paragraph B., Coverage D – Loss of Use (SECTION I – PROPERTY COVERAGES) is deleted in its entirety and replaced with the following:

For HO 00 06:   Subparagraph 2., Fair Rental Value of Paragraph C., Coverage D – Loss of Use (SECTION I – PROPERTY COVERAGES) is deleted in its entirety and replaced with the following:

2.   Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or "held for rental" by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

II.   The following definition is added to Paragraph B. of the DEFINITIONS section:

"Held for rental" means that, at the time of the loss, the "residence premises" or a part of the "residence premises" is either:

1.   Advertised in a newspaper, circular, flyer, internet site, or by any other publicly available means as offered for rental; or

2.   Listed with a real estate broker or agent as offered for rental.

All other terms and conditions of the policy remain the same.

LEX 00 159 03 09

This endorsement, effective 12:01 A.M., 07/02/2013
Forms a part of Policy No.: 60945874
Issued to:   Wachter, Marc
By: Lexington Insurance Company

## (1) OUTDOOR SWIMMING POOL OR OTHER SIMILAR BASIN – COVERAGE PROVIDED UNDER COVERAGE B ONLY AND
## (2) EXCLUSION FOR FAILURE TO MAINTAIN PROPER WATER LEVEL IN A SWIMMING POOL ENDORSEMENT

This endorsement modifies insurance provided by the policy:

Notwithstanding any other provision of this policy to the contrary, an "outdoor swimming pool, spa, hot tub, or any other similar basin" shall only be covered under Coverage B – Other Structures.

As used herein, "outdoor swimming pool, spa, hot tub, or any other similar basin" means a swimming pool, spa, hot tub, or any other similar basin which is not entirely contained within the outer, solid, weight-bearing frame of your dwelling, including the basement.

Paragraph 10. is added to SECTION I – EXCLUSIONS as follows:

10.   **Failure to Maintain Proper Water Level in a Swimming Pool**

The insured's failure or any other person's failure while acting on the insured's behalf, to maintain the proper water level in your swimming pool in accordance with maintenance guidelines governing the care of such swimming pool.

All other terms and conditions of the policy remain the same.

LEX 00 159 03 09

This endorsement, effective 12:01 A.M., 07/02/2013
Forms a part of Policy No.: 60945874
Issued to: Wachter, Marc
By: Lexington Insurance Company

## SPECIFIC BUILDING MATERIALS EXCLUSION

This endorsement modifies insurance provided by the policy:

I.   With respect to **Coverage A – Dwelling, Coverage B – Other Structures, Coverage C – Personal Property, and Coverage D – Loss of Use**, we do not cover direct or indirect loss or damage, loss of use, or any ensuing loss or resulting damage arising out of or caused by: (i) any material in or the composition of the "specific building material(s)", (ii) the deterioration of "specific building material(s)" or (iii) the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)" which results in loss or damage to such "specific building material(s)" or any dwelling, other structures, personal property, or property of others.

II.  **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to "bodily injury", "property damage" or any other loss, cost, damage, expense, injury, claim or "suit", caused by, arising out of, or resulting directly or indirectly, in whole or in part from: (i) any material in or the composition of the "specific building material(s)", (ii) the deterioration of "specific building material(s)" or (iii) the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)".

In addition, we will not pay any, loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)".

As used herein, "specific building material(s)" means drywall, plasterboard, wallboard, gypsum board, sheetrock, blue board, or greenboard and includes the outer paper or other covering which forms a part of such aforementioned building materials.

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

LEX 00 168 09 09

This endorsement, effective 12:01 A.M., 07/02/2013
Forms a part of Policy No.: 60945874
Issued to: Wachter, Marc
By: Lexington Insurance Company

## INFLATION GUARD FOR COVERAGE A ONLY NOTICE

NOTICE: The Coverage A limit of liability as shown on the Declarations applies to the *entire* policy period. If you renew this policy, such Coverage A limit of liability will be automatically increased by   2 % unless a higher Coverage A limit of liability is requested.

LEX 00 169 09 09

ENDORSEMENT #

This endorsement, effective 12:01 A.M., 07/02/2013
Forms a part of Policy No.: 60945874
Issued to: Wachter, Marc
By: Lexington Insurance Company

## RESIDENCE PREMISES ONLY COVERAGE FOR COVERAGE E AND F
### FOR USE WITH FORM HO 00 03 AND HO 00 06

This endorsement modifies insurance provided by the policy:

## SECTION II – LIABILITY COVERAGES

Paragraph A., Coverage E – Personal Liability of SECTION II – LIABILITY COVERAGES is deleted and replaced with the following:

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" at the "residence premises" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable.  Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

## SECTION II – LIABILITY COVERAGES

Paragraph B., Coverage F. – Medical Payments to Others of SECTION II – LIABILITY COVERAGES is deleted and replaced with the following:

### B. Coverage F. – Medical Payments to Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident on the "residence premises" causing "bodily injury".  Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.  This coverage does not apply to you or regular residents of your household except "residence employees".  As to others, this coverage applies only to a person on the "residence premises" with the permission of an "insured".

All other terms and conditions of the policy remain the same.

LEX 01 03 11 04

POLICY NUMBER: 60945874

HOMEOWNERS
LEX 04 33 11 04

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED FUNGUS(I), MOLD(S), SPORE(S), WET OR DRY ROT, BACTERIA, MILDEW OR YEAST COVERAGE

### SCHEDULE*

| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Mold Related Items" | $ 5,000 |
| 2. | Section II – Coverage E Aggregate Sublimit Of Liability for "Mold Related Items" | $ 5,000 |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

## DEFINITIONS
The following definitions are added:

1. "Mold Related Items" include the following definitions for "Fungus(i)", "Mold(s)", "Spore(s)", but also includes, Wet or Dry Rot, Bacteria, Mildew or Yeast.

   a. "Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, mushrooms, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

   b. "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

   c. "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

## SECTION I – PROPERTY COVERAGES
The following Additional Coverage is added:

13. "Mold Related Items"  (or Subparagraph 12. if this endorsement is attached to HO 00 06)

    a. The amount shown in the Schedule above is the most we will pay for:

       (1) The total of all loss payable under Section I – Property Coverages caused by "mold related items";

       (2) The cost to remove "mold related items" from property covered under Section I – Property Coverages;

       (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "mold related items"; and

       (4) The cost of testing of air or property to confirm the absence, presence or level of "mold related items" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "mold related items".

    b. The coverage described in 13.a. (or Subparagraph 12.a. if this endorsement is attached to HO 00 06) only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims made.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "mold related items", loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "mold related items" causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Endorsement.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

If this endorsement is attached to HO 00 03 without LEX 15 31 or HO 00 03, HO 00 04 and HO 00 06 with LEX 15 31:

Paragraph A.2.c.(6)(c) or 1.b.(5)(c) (if LEX 15 31 is attached) is deleted and replaced by the following:

(c) or (c) Smog, rust or other corrosion;

Paragraph A.2.c.(6)(i) or 1.b.(5)(i) (if LEX 15 31 is attached) is added:

(i) or (i) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 06 with HO 17 32:

For Coverage A:

Paragraph 2.c.(5) is deleted and replaced with the following:

(5) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.c.(6)(c) is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion A.10. (or Exclusion 10. if this endorsement is attached to either a HO 00 04 or HO 00 06) is added.

10. "Mold Related Items"

"Mold Related Items" means the presence, growth, proliferation, spread or any activity of "mold related items".

This Exclusion does not apply:

a. When "Mold Related Items" results from fire or lightning; or

b. To the extent coverage is provided for in the "Mold Related Items" Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "Mold Related Items" is covered.

## SECTION I – CONDITIONS

Condition P. Policy Period (or Condition O. if this endorsement is attached to HO 00 04) is deleted and replaced by the following:

P. Policy Period

This policy applies only to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition A. Limit Of Liability is deleted and replaced by the following:

A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "Mold Related Items" will not be more than the Section II – Coverage E Aggregate Sublimit Of Liability for "Mold Related Items". That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

a. Number of locations insured under the policy to which this endorsement is attached;

b. Number of persons injured;

c. Number of persons whose property is damaged;

d. Number of "insureds"; or

e. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "Mold Related Items" described in A. Limit Of Liability of this endorsement, Condition B. Severability Of Insurance is deleted and replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – Conditions 1., Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other terms and conditions of the policy remain the same.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 A.M. 07/02/2013
forms a part of Policy No. 60945874
Issued to Wachter, Marc
by Lexington Insurance Company

## COVERAGE TERRITORY ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not limited to,
sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's
Office of Foreign Assets Control ("OFAC").

89644 (7/05)

## WHAT TO DO IF YOU SUFFER A LOSS TO YOUR HOME AND PROPERTY

**Below are steps you should follow whenever you are confronted with a loss to your home and/or personal property.**

### Non-Catastrophic Event

- **Promptly report your loss to your insurance agent.**
  Your agent has the most updated knowledge of your insurance coverage and can help you throughout the claim process.

- **Protect your property from further damage or loss by hiring a qualified professional to assist in making temporary repairs.**

- **Keep an accurate record of repair costs.**
  Be ready to provide the claim professional with copies of paid invoice, check numbers or cash receipts.

- **In cases of theft or vandalism immediately notify your local police.**

- **Complete a room by room inventory of both the damage to your dwelling and contents.**
  When contents are involved be sure your inventory includes detailed description of the item, ages, places of purchases as well as today's cost to replace. You will be requested by the claims professional to provide all supporting documentation you have regarding these items to include credit card or purchase receipts as well as copies of cancelled checks.

### Catastrophic Event

- **Promptly report your loss to your insurance agent.**
  Often in times of catastrophes utilities in your area are affected and you will not be able to contact you local agent or broker who is being affected by the same conditions.  In these cases you may call toll free claim reporting hotline *Lex Call One* to report **Catastrophic claim** at 1-800-931-9546, Fax #866-480-5396. To report **Catastrophic claim** by email send email to ~~lexlexclaimreporteast@lexclaimreporteast.com~~.

- **To the best of your ability protect your property from further damage or loss by making temporary repairs.**
  In times of widespread damage, such as in the case of hurricanes, it may not be possible for you to retain a contractor to assist with these repairs for several days after the event. Do what you can until you can contact and retain a professional.

- **Keep copies of all invoices and expense incurred.  Make sure they are detailed.**

- **Complete a room by room inventory of all damage.**
  When contents are involved make sure your inventory includes a detailed description of items, ages of each item, place of purchase and cost to replace.

*For information on safety tips, contact the Institute for Business & Home Safety at ~~www.disastersafety.org~~.  For up to date tracking of approaching hurricanes access the National Oceanographic & Atmospheric Administration at ~~www.noaa.gov~~*

Claims Notice to Policyholders

Filing # 19301749 Electronically Filed 10/13/2014 12:04:13 PM

IN THE CIRCUIT COURT FOR THE 11th JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FLORIDA

Case No.

MARC WACHTER AND
ANASTASIA WACHTER

      Petitioners,

vs.

LEXINGTON INSURANCE
COMPANY,

      Respondent.

## REQUEST FOR ADMISSIONS

COMES NOW Petitioners, by and through the undersigned attorney, and pursuant to the applicable Florida Rules of Civil Procedure, hereby request Respondent to admit or deny the following items:

1.     On the date of the alleged loss described in the Complaint that the Policy described in the Complaint was in full force and effect.

2.     Petitioners are the named insureds under the insurance policy described in the Complaint.

3.     The premises described in the Complaint are the insured premises under the insurance policy described in the Complaint.

4.     Prior to the institution of this action, Petitioners made a claim under the Policy described in the Complaint for a loss which Petitioners claim occurred within the applicable policy periods.

5.     Respondent assigned claim numbers to the subject loss as described in the Complaint.

6.     Respondent does not know an exact date certain as to when the loss occurred if the same was caused by "[c]onstant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years".

7.     If the loss was caused by "[c]onstant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years," Respondent has no evidence that the "repeated seepage or leakage of water or the presences or

condensation of humidity, moisture or vapor" was known to all insureds.

8.     If the loss was caused by "[c]onstant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years," Respondent has no evidence that the "repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor" was not hidden beneath the floors.

9     Respondent did not make a request in writing for the Petitioners to submit to an examination under oath for either of the alleged losses.

10.     Petitioners permitted Respondent access to the premises described in the subject Policy after the date of the alleged loss.

11.     As of the date of the filing if this lawsuit, that Respondent had denied the Petitioners' claim for insurance benefits for the alleged loss described in the Complaint.

12.     As of the date of the filing if this lawsuit, Respondent had not made any payment of insurance proceeds to Petitioners for the subject loss described in the Complaint.

13.     The sudden and accidental discharge of water from Petitioners' Air Conditioner is a physical loss to their property.

14.     The sudden and accidental discharge of water from Petitioners' Air Conditioner which causes damage is an ensuing loss Petitioners' property and covered under their Policy.

15.     Based upon the description of the loss by Petitioners and investigation by Respondent, the event giving rise to the insurance claim is a covered event, Respondent, however, contends the damage is excluded because it was known to the insureds and/or not hidden beneath the floors.

16.     Attached is true and accurate copy of the BJS Insurance Services ("BIS") report as Exhibit "A."

17.     BIS was hired as Respondent's representative who assessed whether the risk was acceptable to underwrite.

18     Based in part on upon BIS' inspection, Respondent bound Petitioners' policy of insurance.

19     BIS took photographs of the interior of Petitioners' home and did not indicate in its report that there was "cupped flooring conditions" or "venting" problems or associated "flooring moisture issues."

20.     The "appraisal photos" taken in mid-June 2013 referenced by ESI visibly showed cupping damage to Petitioners' wood flooring.

21.     The Respondent damaged Petitioners' flooring when it cut holes in their floor to

provide access for their inspector from EIS who was able to tell from the "appraisal photos" that the damage is excluded based upon his visible inspection.

## CERTIFICATE OF SERVICE

     **WE HEREBY CERTIFY** that a true and correct copy of the foregoing instrument has been served along with the Summons and Complaint.

> **THE FARBER LAW FIRM**
> Attorney for Petitioners
> 2199 Ponce De Leon Blvd. Suite 200
> Miami, Florida 33134
> Telephone: (305) 774-0134
> Facsimile:   (305) 774-0135
> dfarber@dfarberlaw.com
>
>
> By: /s/ David S. Farber
>      David S. Farber
>      FBN: 0370230

# EXHIBIT "A"

Value Over
Addressed - Occupancy

# BIS
INSURANCE SERVICES

2170 W State Road 434, Suite 154
Longwood, FL 32779
(407) 321-0820 ~ Fax (407) 321-5204

## Residential - High Value

| | |
|---|---|
| Policy Number | 60945874 |
| Company | HULL & CO. |
| Branch Office | FT LAUDERDALE |
| Agency | SOUTH BEACH INS. AGENCY |
| Field Specialist | 139 Date of Survey 07/10/2013 |

Insured: **WACHTER, MARC**    Interviewed: **MR. MARC WACHTER-OWNER** (Name & Title)

Location Surveyed: **310 E. RIVO ALTO DR.**    City: **MIAMI BEACH**   ST: **FL** Zip: **33139**

## GENERAL

Occupant Is................ ☑ Bldg Owner ☐ Tenant
Owner Entity/Structure.. ☐ Corporation ☑ Indv. ☐
Usual Occupancy........... Primary Residence
Caretaker................. None
Occupied as............... Single Family Home
Neighborhood Type........ City Residential
Community Security....... Not Gated
Area Economy............. ☑ Stable ☐ Improving ☐ Declining
Visible to Neighbors..... ☐ Yes ☒ No
Ongoing Renovations..... ☐ Yes ☑ No
New Construction......... ☐ Yes ☑ No
Flood Zone area.......... ☒ Yes ☐ No

## PHYSICAL PREMISES    Overall Condition.... Satisfactory

Year Built............... 1940    Number of Stories. 2
Construction Class... Joisted Masonry
Exterior Walls 1st... Concrete Block   Cover.... Stucco
Ext. Walls Above..... N/A    Cover.... N/A
Foundation........... ☑ Closed ☐ Open  Material: Concrete Slab
Base Floor........... Concrete    Upper Floors: N/A
Roof Type............ Gable   Age:    Condition: Satisfactory
Roof Construction... Wood Joist/ Wood deck  Cover: Metal panels
Basement............. ☐ Full ☐ Partial ☐ Parking ☑ None
Parking.............. ☐ Lot ☐ Curb ☑ Garage ☑ Driveway
Premises Has:    Comment, if needed
  Storm Shutters... ☐ Yes ☒ No
  Impact Glass..... ☐ Yes ☐ No
  Roof Straps...... ☐ Yes ☐ No  Unk, no access to attic

## PROTECTION    Protection Class: 1

Sprinkler System..... ☑ No ☐ Yes
System Coverage... ☐ Full ☐ Partial ☐ Wet ___ PSI ☐ Dry
  Serviced by....    Date:
Smoke Detectors... Number: 5  ☐ None ☐ Batt ☑ Wired
Heat Sensors... Number:    ☑ None
Fire Extinguishers... ☐ Yes ☑ No  ☐ In Svc ☐ Discharged
Type & Date of Svc.    Date:
Premises Alarm... ☑ Yes ☐ No  Co-Name: ADT
Alarm Service Type.. ☐ CSA ☐ Local ☐ Fire Panel Alarm System
Protection type..... ☐ Fire ☐ Burglary ☐ "UL" Certificate Rcvd
Public Protection... ☐ Paid ☐ Vol  Dist. to Station.. W/2 miles
Nearest Hydrant... Within 100 Feet
Alt. Water Source.... ☐ Yes ☑ No  If Yes :

## BUILDING SYSTEMS

Heating/Cooling type...... Split Central Freon/Electric AC
HVAC Systems............. ☑ Central ☐ Indiv. ☐ None
Fuel..................... ☑ Electric ☐ Gas ☐ Oil
Electrical systems....... ☑ Conduit ☐ Romex ☐
Electrical protection.... ☑ Breaker ☐ Fuses ☐ Both

## BUILDING UPDATES

Roof     New within the past five years
Plumbing New within the past five years
Electrical New within the past five years
HVAC     New within the past five years

## HAZARDS

Swimming Pool........ ☒ Yes ☐ No ☐ In Ground ☐ Above Grnd
Hot Tub or Spa....... ☐ Yes ☑ No ☐ Covered
Fenced/Screened In... ☑ Yes ○ No ☐ Child Guard Around Pool
Dog(s) Seen or Heard. ☐ Yes ☑ No ☐ Fenced In ☐ Sign Posted
Breed, if seen (take photo).
Business On Premises.. ☐ Yes ☑ No
Ammenities..........
Livestock Present.... ☐ Yes ☑ No
Boat/RV Stored outside. ☐ Yes ☑ No
Playground Equipment... ☐ Yes ☑ No ☐ Within a Fenced In Yard
Chimney/Fireplace..... ☒ Yes ☐ No #, Fuel 1-Natural wood
Attached Garage....... ☐ Yes ☑ No # Bays
Flammables Stored...... ☐ No ○ Yes  If YES, cover all materials in narrative
Other Liability Hazards... None Noted

## ADJACENT EXPOSURES

North  40'-2 Story-JM-Dwelling
East   Street
South  Street
West   26'-2 story-JM-Dwelling

## DISTANCE TO WATER

Dist: 0.05  Units: Miles  Body: Biscayne Bay
Dist: 1.85  Units: Miles  Body: Atlantic Ocean

## OUTBUILDINGS   ☑ None

## AREA / RCV

Total less garage... 2,492 sq.ft.   Total Outbuildings..
Garage area......... N/A    Other..
Estimated Replacement Cost...$ 501,352.65

BIS- Residential HVD 06-2013

| BIS INSURANCE SERVICES | 2170 W State Road 434, Suite 154 Longwood, FL 32779 (407) 321-0820 ~ Fax (407) 321-5204 | Policy Number | 60945874 |
|---|---|---|---|
| | | Company | HULL & CO. |
| | | Branch Office | FT LAUDERDALE |
| | **Narrative** | Agency | SOUTH BEACH INS. AGENCY |
| | | Field Specialist 139 | Date of Survey 07/10/2013 |

| Insured: | **WACHTER, MARC** | Interviewed: **MR. MARC WACHTER-OWNER** (Name & Title) |
|---|---|---|
| Location Surveyed: | **310 E. RIVO ALTO DR.** | City: **MIAMI BEACH** ST: **FL** Zip: **33139** |

INTERVIEW: We have interviewed Mr. Marc Wachter, the property owner at this location.

GENERAL: Insured owns this single family dwelling located in a stable residential neighborhood of Miami Beach. The dwelling is owner occupied. There is a swimming pool that is fenced off from the street and adjacent residences to the west and north sides of the property, however there is no childproof enclosure.

PHYSICAL: The dwelling is 1 story, was built in 1940 and is classified as Joisted Masonry construction. The dwelling is approximately 2,492 square feet. There is no garage. There are 3 bedrooms and 3 bathrooms throughout. The roof construction is wood decking with metal panel surface on wood trusses on concrete block exterior walls on poured concrete slab foundation. Electrical service is Romex wiring with circuit breakers protection in good condition. Air conditioning is central with reverse cycle for heat.

PROTECTION: The building is not sprinklered. There are hard wired smoke detectors throughout. No fire extinguishers present. Insured has a central station burglar alarm system monitored by ADT. The Fire Department will respond over paved roadways and is located within 2 miles. PPC-1. There is adequate hydrant service in this area. No access problems. We note no fire hazards upon inspection. Police Department patrols regularly in cars. No particular crime problem in this area. Adequate lighting.

HAZARDS: The upkeep and condition of the dwelling and premises is good. The swimming pool and spa are protected by fencing. No direct access from the street or neighboring dwellings noted. No childproof barrier. No playground equipment, no trampoline. No dogs or other pets noted on premises.

RECOMMENDATIONS: None.

BIS- Residential HV 03-2011

| powered by **simsol** | **Single Family Residence Insurance-to-Value Report** | powered by **simsol** |
|---|---|---|

| | | | |
|---|---|---|---|
| Owner: | MARC WACHTER | Policy Number: | 60945874 |
| Property Address: | 310 E RIVO ALTO DR | Coverage Amount: | $500,000.00 |
| | Miami, FL 33139 | Renewal Date: | |
| Mailing Address: | 310 E RIVO ALTO DR | Valuation Date: | 07/24/2013 |
| | Miami, FL 33139 | Appraiser: | Mike Watson |
| Contact Phone: | | Company: | BIS Insurance Services |
| | | Appraiser Phone: | (321) 250-2819 |

## Property Information

| | | | |
|---|---|---|---|
| Structure: | Single Family Residence | Exterior Walls: | Simple Block or Brick |
| Main Building Area Sqft: | 2,492 Sq.Ft. | Basement: | No |
| Total Living Area Sqft: | 2,492 Sq.Ft. | Split Level: | No |
| Number of Corners: | 10 | Attic/Half Stories: | None |
| Number of Stories: | 1 | Number of | 3 Full, 0 Half |
| Foundation Type: | Slab | Bathrooms: | |
| Year Built: | 1940 | Garage Type: | None |
| | | Carport Type: | None |
| | | Date Assigned: | |
| | | Date Inspected: | |

## Valuation Cost Summary

| | | | |
|---|---|---|---|
| Foundation: | $24,320.47 | Structure Base Value: | $501,352.65 |
| Exterior Walls: | $66,685.17 | Total Replacement Value: | $501,352.65 |
| Exterior Wall Finish: | $32,660.95 | Less Depreciation: | ($396,068.59) |
| Roofing: | $64,509.66 | Actual Cash Value: | $105,284.06 |
| Windows & Doors: | $26,596.62 | | |
| Interior Finish: | $100,116.32 | | |
| Flooring: | $31,029.39 | | |
| Kitchen: | $45,555.57 | | |
| Heating & Cooling: | $15,400.56 | | |
| Plumbing: | $34,080.99 | | |
| Bathroom Finishes: | $13,215.27 | | |
| Additional Bathroom Allowance: | $8,705.00 | | |
| Electrical: | $7,312.80 | | |
| Building Systems: | $1,200.00 | | |
| Special Features: | $25,000.00 | | |
| Structure Base Value: | $501,352.65 | | |
| | | | |
| Actual RCV per SF: | $201.18485 | Rounded RCV per SF: | $201.18 |
| Actual ACV per SF: | $42.24882 | Rounded ACV per SF: | $42.25 |

Valuation Costs include labor and materials, normal overhead and profit as of the date of printing of the 2012 Craftsman Building Costs Manual. Costs are provided by Craftsman Book Company and represent general estimates which are not to be considered a details quantity survey. These costs include generalities and assumptions made by Craftsman and SIMSOL that are common to the type of structures represented in this software product.

# BIS
INSURANCE SERVICES

2170 W State Road 434, Suite 154
Longwood, FL 32779
(407) 321-0820 ~ Fax (407) 321-5204

## Diagram

| | |
|---|---|
| Policy Number | 60945874 |
| Company | HULL & CO. |
| Branch Office | FT LAUDERDALE |
| Agency | SOUTH BEACH INS. AGENCY |
| Field Specialist | 139    Date of Survey    07/10/13 |

**Insured:** WACHTER, MARC

**Location Surveyed:** 310 E. RIVO ALTO DR.    **City:** MIAMI BEACH    **State:** FL



### SKETCH CALCULATIONS



| | |
|---|---|
| A1 : 23.0 x 12.0 = | 276.0 |
| A2 : 0.5(87.0 + 87.0)x1.0 = | 87.0 |
| A3 : 0.5(52.2 + 52.0)x0.2 = | 12.6 |
| A4 : 64.5 x 0.8 = | 48.8 |
| A5 : 0.5 x 0.0x9.5 = | 0.0 |
| A6 : 12.0 x 9.5 = | 114.0 |
| A7 : 0.5 x 0.0x8.0 = | 0.0 |
| A8 : 89.0 x 8.0 = | 711.9 |
| A9 : 0.5 x 4.0x4.0 = | 8.0 |
| A10 : 40.0 x 4.0 = | 160.0 |
| A11 : 0.5 x 0.0x11.5 = | 0.0 |
| A12 : 87.0 x 11.5 = | 1000.4 |
| A13 : 0.5 x 0.0x5.0 = | 0.0 |
| A14 : 9.5 x 5.0 = | 47.5 |
| A15 : 0.5 x 4.2x4.2 = | 9.0 |
| A16 : 4.0 x 4.2 = | 17.0 |
| **DWELLING** | **2492.2** |
| **Total Building Area** | **2492.2** |

BIS-Diagram 01-06

| **BIS** INSURANCE SERVICES<br>2170 W State Road 434, Suite 154<br>Longwood, FL 32779<br>(407) 321-0820 ~ Fax (407) 321-5204<br><br>**Photo Page 1** | Policy Number | **60945874** | |
|---|---|---|---|
| | Company | **HULL & CO.** | |
| | Branch Office | **FT LAUDERDALE** | |
| | Agency | **SOUTH BEACH INS. AGENCY** | |
| | Field Specialist | **139** | Date of Survey **07/10/13** |

Insured: **WACHTER, MARC**

Location Surveyed: **310 E. RIVO ALTO DR.**     City: **MIAMI BEACH**     ST: **FL**   Zip: **33139**



Front view



Side view

# BIS
INSURANCE SERVICES

2170 W State Road 434, Suite 154
Longwood, FL 32779
(407) 321-0820 ~ Fax (407) 321-5204

## Photo Page 2

| | |
|---|---|
| Policy Number | **60945874** |
| Company | **HULL & CO.** |
| Branch Office | **FT LAUDERDALE** |
| Agency | **SOUTH BEACH INS. AGENCY** |
| Field Specialist | **139** Date of Survey **07/10/13** |

Insured: **WACHTER, MARC**

Location Surveyed: **310 E. RIVO ALTO DR.**          City: **MIAMI BEACH**          ST: **FL** Zip: **33139**



Rear view & pool



Interior

BIS Photo 01-08

**BIS**
INSURANCE
SERVICES

2170 W State Road 434, Suite 154
Longwood, FL 32779
(407) 321-0820 ~ Fax (407) 321-5204

**Photo Page 3**

| | |
|---|---|
| Policy Number | **60945874** |
| Company | **HULL & CO.** |
| Branch Office | **FT LAUDERDALE** |
| Agency | **SOUTH BEACH INS. AGENCY** |
| Field Specialist | **139**   Date of Survey   **07/10/13** |

Insured:   **WACHTER, MARC**

Location Surveyed:   **310 E. RIVO ALTO DR.**        City: **MIAMI BEACH**        ST: **FL**   Zip: **33139**



Interior- dining



Kitchen

BIS Photo 01-08

**BIS**
INSURANCE
SERVICES

2170 W State Road 434, Suite 154
Longwood, FL 32779
(407) 321-0820 ~ Fax (407) 321-5204

## Photo Page 4

| | |
|---|---|
| Policy Number | **60945874** |
| Company | **HULL & CO.** |
| Branch Office | **FT LAUDERDALE** |
| Agency | **SOUTH BEACH INS. AGENCY** |
| Field Specialist | **139**   Date of Survey **07/10/13** |

Insured:  **WACHTER, MARC**

Location Surveyed:  **310 E. RIVO ALTO DR.**          City: **MIAMI BEACH**      ST: **FL**   Zip: **33139**



Kitchen



Bedroom

BIS Photo 01-08

**BIS**
INSURANCE
SERVICES

2170 W State Road 434, Suite 154
Longwood, FL 32779
(407) 321-0820 ~ Fax (407) 321-5204

**Photo Page 5**

| | |
|---|---|
| Policy Number | **60945874** |
| Company | **HULL & CO.** |
| Branch Office | **FT LAUDERDALE** |
| Agency | **SOUTH BEACH INS. AGENCY** |
| Field Specialist | **139** Date of Survey **07/10/13** |

Insured: **WACHTER, MARC**

Location Surveyed: **310 E. RIVO ALTO DR.**        City: **MIAMI BEACH**        ST: **FL**  Zip: **33139**



Master bedroom



Master bath

BIS Photo 01-06

# BIS
**INSURANCE SERVICES**

2170 W State Road 434, Suite 154
Longwood, FL 32779
(407) 321-0820 ~ Fax (407) 321-5204

## Photo Page 6

| | |
|---|---|
| Policy Number | 60945874 |
| Company | HULL & CO. |
| Branch Office | FT LAUDERDALE |
| Agency | SOUTH BEACH INS. AGENCY |
| Field Specialist | 139        Date of Survey    07/10/13 |

Insured: **WACHTER, MARC**

Location Surveyed: **310 E. RIVO ALTO DR.**     City: **MIAMI BEACH**   ST: **FL**  Zip: **33139**



Pool and rear of property



Filing # 19301749 Electronically Filed 10/13/2014 12:04:13 PM

IN THE CIRCUIT COURT FOR THE 11th JUDICIAL CIRCUIT

IN AND FOR MIAMI-DADE COUNTY FLORIDA

Case No.

MARC WACHTER AND
ANASTASIA WACHTER

      Petitioners,

Vs.

LEXINGTON INSURANCE
COMPANY,

      Respondent.

## REQUEST FOR PRODUCTION

COMES NOW Petitioners, by and through the undersigned attorneys, and hereby request the Respondent to produce the following items for inspection and/or copying at the office of the undersigned attorneys within the time prescribed by the applicable rules of civil procedure:

### Instructions:

The following apply to this Discovery Request:

      a.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your agents, employees, representatives, affiliates, investigators by any corporation, person or entity affiliated with, related to, or owned or controlled in whole or in part by you, or by your attorneys or their agents, employees, representatives, affiliates, investigators by any corporation, person or entity affiliated with, related to, or owned or controlled in whole or in part by you, or by your attorneys or their agents, employees, representatives or investigators.

      b.     If any requested document or thing cannot be produced in full, produce to the extent possible, indicating what document or portion of that document is being withheld and the reason that document is being withheld.

      c.     In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be produced in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

d.      All documents shall be produced in the file, folder, envelope or other container in which the document are kept or maintained. If, for any reason, the container cannot be produced, please produce copies of all labels or other identifying markings.

e.      A request for each document "mentioning, discussing, relating or referring to "a subject matter extend to each document that constitutes, contains, supports, modifies, contradicts, criticizes, concerns, describes, records, reports, reflects, relates to, was prepared in connection with, arises from, or is or has been collected, recorded, by a present or former agent, representative, officer, employee, attorney, board, committee or subcommittee, or any other person acting or purporting to act on your behalf in relation to the subject matter specified.

f.      Documents not otherwise responsive to this Discovery Request shall produced if such documents mention, discuss or refer to, or explain the documents which are called for by this Discovery Request or if such documents are attached to documents called for by this Discovery Request and constitute deposit slips, transmittal memoranda, letters, comments, evaluation, or similar materials.

g.      If a document once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the documents and state the details concerning its loss.

h.      If you claim the attorney-client privilege or any other privilege or work product protection for any document, with respect to that document:

(1)      state the date of the document;

(2)      identify each and every author of the document;

(3)      identify each and every other person who prepared or participated in the preparation of the document;

(4)      identify each and every person who received the document;

(5)      identify each and every person from whom the document was received;

(6)      state the present location of the document and all copies thereof;

(7)      identify each and every person having custody or control of the document and all copies thereof; and

(8)      provide sufficient further information concerning the document and the circumstances and general content thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of the claim.

i.      In producing the documents and other materials responsive to these requests, identify by paragraph and subparagraph the request to which each produced document is responsive. If a document is responsive to more than one request, each request to which it is responsive should be identified.

j.      Any request for a document "written by" a person, or correspondence "between" certain persons shall include, without limitation, all correspondence or other documents written by, addressed to, received by, copied to, or signed by such person in any capacity, whether as an agent, employee, employer, director, officer, shareholder, attorney, accountant, or representative of any person.

## DEFINITIONS

"Document" is used herein in its customary legal broad sense, and includes without limitation, any kind of written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, copies and drafts and both sides thereof, and including but not limited to: papers, books, letters, photographs, objects, tangible things, correspondence, telegrams, cables, telex messages, computer discs memoranda, notes, notations, work papers, transcript, minutes, reports, drawings, blueprints, and tape recording of any size, and recordings of telephone or other conversations, or of interviews, conferences, or other meetings, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journal, statistical reports, desk calendars, appointment books, diaries, lists, tabulations, summaries, sound recordings, computer printouts, data processing, input and output, microfilms, and all other records kept by electronic, photographic or mechanical means, and things similar to any of the foregoing, however denominated.

## DOCUMENTS TO BE PRODUCED

1.      A true and correct certified copy of the insurance policy described in the Complaint, including all declaration sheet(s) addendums and attachments.

2.      Any and all correspondence or written communications from Respondent, or its agents to Petitioners, or their agents, which in any manner pertain to Petitioners' alleged loss as described in the Complaint.

3.      Any and all correspondence or written communications from Petitioners, or his/her agents to Respondent, or its agents, which in any manner pertain to Petitioners' alleged loss as described in the Complaint.

4.      Any and all photographs taken by the Respondent or Respondent's agents showing the extent of damage to the insured premises involved herein as were taken prior to the filing of this lawsuit.

5.      Any and all tape recordings of any statements made by Petitioners or Petitioners' agents or employees

6.      Any an all transcripts or written statements from the Petitioner including, without limitation, transcripts of examinations under oath.

7.      Copies of each and every bill or estimate for repair to the subject property submitted to Respondent by Petitioners or Petitioners' agents or employees.

8.      Any and all written estimates or reports reflecting examination or inspection by Respondent or Respondent's agents of any of the alleged damage to the insured premises.

9.      Any and all brochures, summary statements, pamphlets and advertising materials prepared by or on behalf of Respondent and disseminated to insurance agencies or policyholders which in any manner describe the coverages and/or exclusions under the same type of policy involved in this action.

10.     Respondent's entire claim file up from the date of the initial notice of the loss until the day before Respondent knew that Respondent was going to deny or litigate the claim.

11.     Respondent's entire claim file for the entire time that the claim was being handled by Respondent not in anticipation of litigation for the claim.

12.     All documents relating to or supporting Respondent's denial of any allegation of Petitioners' Complaint, and relating to or supporting each affirmative or general defense asserted by Respondents.

13.     All underwriting files pertaining to the policy of insurance described in the Complaint.

14.     All delivery receipts, written proof of mailing and all other records evidencing in any manner the date and/or dates that the entire policy of insurance described in the Complaint was mailed or delivered to Petitioners.

15.     Any document showing that the loss happened on a particular date certain.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been served along with the Summons and Complaint.

THE FARBER LAW FIRM
Attorney for Plaintiffs
2199 Ponce De Leon Blvd. Suite 200
Miami, Florida 33134
Telephone: (305) 774-0134
Facsimile:  (305) 774-0135
dfarber@dfarberlaw.com

By: /s/ David S. Farber
    David S. Farber
    FBN: 0370230

Filing # 19301749 Electronically Filed 10/13/2014 12:04:13 PM

IN THE CIRCUIT COURT FOR THE 11th JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FLORIDA

Case No.

MARC WACHTER AND
ANASTASIA WACHTER

    Petitioners,

vs.

LEXINGTON INSURANCE
COMPANY,

    Respondent.

## PETITIONERS' FIRST SET OF INTERROGATORIES TO RESPONDENT, LEXINGTON INSURANCE COMPANY

Plaintiffs pursuant to Rule 1.340(e), Florida Rules of Civil Procedure, propound the attached

interrogatories, which are 7 in number, to Respondent, LEXINGTON INSURANCE COMPANY.,

which will be due within forty-five (45) days from the date of service hereof.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing instrument has
been served along with the Summons and Complaint

**THE FARBER LAW FIRM**
Attorney for Petitioners
2199 Ponce De Leon Blvd. Suite 200
Miami, Florida 33134
Telephone: (305) 774-0134
Facsimile:  (305) 774-0135
dfarber@dfarberlaw.com


By: /s/ David S. Farber
      David S. Farber
      FBN: 0370230

## INSTRUCTIONS AND DEFINITIONS

The following instructions and definitions shall apply herein:

A.   "Person" means any individual, partnership, firm, association, corporation or other government, legal or business entity.

B.   "Document" includes any written, recorded or graphic matter, however produced or reproduced, of every kind and regardless of where located, including but not limited to any summary, schedule, memorandum, note, statement, letter, telegram, inter-office communication, report, diary, desk or pocket calendar or notebook, day book, appointment book, pamphlet, periodical, work sheet, list, graph, chart, index, tape, record, partial or complete report of telephone or oral conversation, compilation, tabulation, study, analysis, transcript, minutes, data sheet, data processing card or tape, and all other memorials of any conversations, meetings and conferences by telephone or otherwise, and any other writing or recording which is in the possession, custody or control of Defendant or Defendant's attorneys.  The term "document" or "documents" shall also include all non-conforming copies of the above and the files in which said are maintained.

C.   "You" means Defendant, her agents, or other persons acting on behalf of Defendant.

D.   In each case where you are asked to identify or to state the identity of a document or where the answer to an Interrogatory refers to a document, state with respect to each such document:

1.   the identity of the person who signed it, or over whose name it was issued;

2.   the addressee or addresses;

3.   the nature and substance of the document with sufficient particularity to enable the same to be identified;

4.   the date of the document;

5.   the identity and address of each person who has custody of the document or a copy thereof; and

6. if such document is no longer within your custody or control, state whether it is:

    a. missing or lost, has been destroyed, has been transferred voluntarily or involuntarily to others, and has been otherwise disposed of; and

    b. the circumstances surrounding and authorization for such disposition.

In lieu of the above, you may attach said documents to the answers to these Interrogatories, specifying in your answer which documents are attached in answer thereto.

E. In each case where you are required to identify an oral communication, or where the answer to the Interrogatory refers to an oral communication or statement, state with respect thereto:

1. the date and place thereof;

2. the identity of each person who participated in or heard any part of the conversation;

3. if an individual, his business affiliation or employment at the date of the transaction, event, or matter referred to; and

4. if a corporation or association, the business activity in which it was engaged at the date of the transaction, event or matter referred to.

F. If you cannot answer a particular interrogatory in full, after exercising due diligence to secure the information to do so, state the answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

## PETITIONERS' FIRST SET OF INTERROGATORIES TO RESPONDENT

1. Identify all persons who participated in the preparation of the responses to these interrogatories.

2. Please specifically state why you did not extend coverage for the loss as set forth in Petitioners' Complaint, including any policy language you assert supports your position to deny the claim, as well as provide a detailed explanation of the facts supporting the basis of each and every denial. For each such response, please provide the name, address, and telephone number of the person with most knowledge concerning the denial and its factual basis as well as provide the scope of his/her knowledge.

3. Please specifically state why you had access holes cut in Petitioners' floor if, according to your expert, Mel A. Underwood, P.E. of Engineering Systems, Inc. ("ESI"), "appraisal photos" taken in mid-June 2013, visibly showed damaged wood flooring and that "[a] proper home inspection would have brought attention to the cupped flooring conditions, the venting and associated flooring moisture issues." In your explanation, please include the policy language you assert which supports your position that you can destructively test and why, if you damaged Petitioners continuous wood flooring, you would not be responsible to cover said damage with the application of Florida Statute §626.9744, entitled "Claim settlement practices relating to property insurance." For such response, please provide the name, address, and telephone number of the person with most knowledge concerning the decision cut access holes when the damage was visible and not to extend coverage for the damage caused and repairs attendant with same as well as provide the scope of his/her knowledge.

4.  To the extent that you contend the Petitioners' loss is excluded by the policy exclusion for "[c]onstant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years" please state your factual basis for said contention as well as why the loss is not covered given the second part of the exclusion which indicates "unless such repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insured" and is hidden within the walls or ceilings or beneath the floors or above the ceilings or a structure." For such response, please provide the name, address, and telephone number of the person with most knowledge concerning your decision that the loss is not covered as it was caused by repeated seepage or leakage, the factual evidence or basis which supports the <u>exact</u> date in which the loss occurred, how it was known or unknown to all insureds, and was or was not hidden beneath the floors as well as provide the scope of his/her knowledge.

5.  List the names, addresses, and official positional relationship with the Respondent, if any, who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit, and specify the subject matter about which the witness has knowledge.

6.  Identify and describe each document known to Respondent which is related to the Petitioners' account and/or policy.

7. As to each affirmative defense raised in your answer filed in this action, please state the name and address of each person who has personal knowledge of the facts upon which you base the affirmative defense, setting forth which specific affirmative defense that person has knowledge and describing in as much detail as possible the facts known by said person.

LEXINGTON INSURANCE COMPANY

BY: _____

STATE OF FLORIDA            )
                            )SS:
COUNTY OF            )

BEFORE ME, the undersigned authority, personally appeared _____, personally known to me or who produced identification (Type of ID produced _____) who, by me, being first duly sworn, states that he/she executed the foregoing answers to interrogatories and that they are true and correct to the best of his/her knowledge and belief.

SWORN TO AND SUBSCRIBED before me this ____ day of _____, 2014.

_____
NOTARY PUBLIC, STATE OF FLORIDA
     AT LARGE

My commission expires:

_____

## Civil Remedy Notice of Insurer Violations

Filing Number:     **268865**

Filing Accepted:   **10/10/2014**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | DAVID FARBER |
| Street Address: | 2199 PONCE DE LEON BLVD., SUITE 200 |
| City, State Zip: | CORAL GABLES, FL 33134 |
| Email Address: | |
| Complainant Type: | Other |

### Insured

| | |
|---|---|
| Name: | MARC AND ANASTASIA WACHTER |
| Policy #: | 60945874 |
| Claim #: | 683-594922 |

### Attorney

| | |
|---|---|
| Name: | DAVID FARBER |
| Street Address: | 2199 PONCE DE LEON BLVD., SUITE 200 |
| City, State Zip: | CORAL GABLES, FL 33134 |
| Email Address: | |

### Notice Against

| | |
|---|---|
| Insurer Type: | Authorized Insurer |
| Name: | LEXINGTON INSURANCE COMPANY |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**WARDELL JOHNSON**

Type of Insurance:     **Residential Property & Casualty**

DFS-10-363
Rev. 11/2007

## Civil Remedy Notice of Insurer Violations

Filing Number:      268865

**Reason for Notice**

Reasons for Notice:

    Claim Denial

    Claim Delay

    Unsatisfactory Settlement Offer

    Unfair Trade Practice

    Violation of Florida Statute and Adminstrative Code

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 624.155(1)(b)(3) | Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. |
| 626.9541(1)(i)(2) | A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(b) | Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

1

DFS-10-363
Rev. 11/2007

**OTHER VIOLATIONS:**
69O-220.201(4) – THE WORK OF ADJUSTING INSURANCE CLAIMS ENGAGES THE PUBLIC TRUST. AN ADJUSTER MUST PUT THE DUTY FOR FAIR AND HONEST TREATMENT OF THE CLAIMANT ABOVE THE ADJUSTER'S OWN INTEREST, IN EVERY INSTANCE.
69O-220.201(4)(B) – AN ADJUSTER SHALL TREAT ALL CLAIMANTS EQUALLY. AN ADJUSTER SHALL NOT PROVIDE FAVORED TREATMENT TO ANY CLAIMANT. AN ADJUSTER SHALL ADJUST ALL CLAIMS STRICTLY IN ACCORDANCE WITH THE INSURANCE CONTRACT.
69O-220.201(4)(C) – AN ADJUSTER SHALL NEVER APPROACH INVESTIGATIONS, ADJUSTMENTS, AND SETTLEMENTS IN A MANNER PREJUDICIAL TO THE INSURED.
69O-220.201(4)(D) – AN ADJUSTER SHALL MAKE TRUTHFUL AND UNBIASED REPORTS OF THE FACTS AFTER MAKING A COMPLETE INVESTIGATION.
69O-220.201(4)(E) – AN ADJUSTER SHALL HANDLE VERY ADJUSTMENT AND SETTLEMENT WITH HONESTY AND INTEGRITY AND ALLOW A FAIR ADJUSTMENT OR SETTLEMENT TO ALL PARTIES WITHOUT ANY REMUNERATION TO HIMSELF EXCEPT THAT TO WHICH HE IS LEGALLY ENTITLED.
69O-220.201(4)(F) – AN ADJUSTER, UPON UNDERTAKING THE HANDLING OF A CLAIM, SHALL ACT WITH DISPATCH AND DUE DILIGENCE IN ACHIEVING A PROPER DISPOSITION THEREOF.
69O-220.201(4)(G) – AN ADJUSTER SHALL PROMPTLY REPORT TO THE OFFICE ANY CONDUCT BY ANY LICENSED INSURANCE REPRESENTATIVE OF THIS STATE, WHICH CONDUCT VIOLATES ANY INSURANCE LAW OR OFFICE RULE OR ORDER.
F.S. §626.877 – EVERY ADJUSTER SHALL ADJUST OR INVESTIGATE EVERY CLAIM, DAMAGE, OR LOSS MADE OR OCCURRING UNDER AN INSURANCE CONTRACT, IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE CONTRACT AND OF THE APPLICABLE LAWS OF THIS STATE.
F.S. §627.7015(2) –AT THE TIME A FIRST-PARTY CLAIM WITHIN THE SCOPE OF THIS SECTION IS FILED,THE INSURER SHALL NOTIFY ALL FIRST-PARTY CLAIMANTS OF THEIR RIGHT TO PARTICIPATE IN THE MEDIATION PROGRAM UNDER THIS SECTION. THE DEPARTMENT SHALL PREPARE A CONSUMER INFORMATION PAMPHLET FOR DISTRIBUTION TO PERSONS PARTICIPATING IN MEDIATION UNDER THIS F.S. §627.4261(1)(A)- UPON AN INSURER'S RECEIVING A COMMUNICATION WITH RESPECT TO A CLAIM, THE INSURER SHALL, WITHIN 14 CALENDAR DAYS, REVIEW AND ACKNOWLEDGE RECEIPT OF SUCH COMMUNICATION UNLESS PAYMENT IS MADE WITHIN THAT PERIOD OF TIME OR UNLESS THE FAILURE TO ACKNOWLEDGE IS CAUSED BY FACTORS BEYOND THE CONTROL OF THE INSURER WHICH REASONABLY PREVENT SUCH ACKNOWLEDGMENT. IF THE ACKNOWLEDGMENT IS NOT IN WRITING, A NOTIFICATION INDICATING ACKNOWLEDGMENT SHALL BE MADE IN THE INSURER'S CLAIM FILE AND DATED. A COMMUNICATION MADE TO OR BY AN AGENT OF AN INSURER WITH RESPECT TO A CLAIM SHALL CONSTITUTE COMMUNICATION TO OR BY THE INSURER.
F.S. §627.4261(5) – WITHIN 90 DAYS AFTER AN INSURER RECEIVES NOTICE OF A PROPERTY INSURANCE CLAIM FROM A POLICYHOLDER, THE INSURER SHALL PAY OR DENY SUCH CLAIM UNLESS THE FAILURE TO PAY SUCH CLAIM IS CAUSED BY FACTORS BEYOND THE CONTROL OF THE INSURER WHICH REASONABLY PREVENT SUCH PAYMENT. FAILURE TO COMPLY WITH THIS SUBSECTION CONSTITUTES A VIOLATION OF THIS CODE.

**POLICY LANGUAGE:**
2. We do not insure, however, for loss;
(5) Constant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insured" and is hidden within the walls or ceilings or beneath the floors or above the ceilings or a structure.
"We will adjust all losses with you."
"We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property…. We do not insure, however, for loss:  2. Caused by: …"

**BELIEF:**
"WE WILL ADJUST ALL LOSSES WITH YOU."
"PERILS INSURED AGAINST," AND IN PERTINENT STATES:
"We insure against risk of direct physical loss to property described in Coverages A and B. We do not insure, however, for loss:  c. Caused by: …"

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

THE INSUREDS, MARC WACHTER and ANASTASIA WACHTER's, CLAIM RESULTS FROM WATER DAMAGE. Fully expecting their insurer, Lexington Insurance Company, to cover and pay for their loss, the insurer, without any reservation of rights or indication that it could or would deny coverage, requested Petitioners allow it to cut approximately 4ft x 4ft of wood flooring in Petitioners' bathroom and then their kitchen. The Petitioners' loss which Petitioners' believe is caused by an A/C problem, was refuted by the insurer's engineer as he found, and the insurer relied upon, an alleged long term repeated leakage or seepage problem occurring over a period of time. He made this determination having reviewed photographs of the property taken before the policy was bound which showed visible damage which if true, would have obviated the need to cut holes in the insureds' continuous wood flooring. Not only is the engineer's opinion refuted by the insurer's own agent who inspected the home prior to the policy being bound and finding that no such conditions exist, the insurer has refused to extend coverage for the A/C discharge of water causing damage, its destructive testing to continuous wood flooring, or even if its determination as to repeated seepage or leakage is correct, extending coverage for same since it was "unknown to all insureds" and was "hidden" "beneath the floors;" thereby, leaving its insureds to suffer and

AS OF THE DATE OF THE SUBMISSION OF THIS NOTICE, LEXINGTON INSURANCE COMPANY HAS FAILED TO ACT IN GOOD FAITH IN HONORING ITS OBLIGATIONS UNDER THE POLICY AND TO MAKE FULL PAYMENT OF

INSURANCE PROCEEDS THAT WERE DUE THE INSUREDS UNDER THE POLICY AS A RESULT OF THE INSUREDS LOSS. IN DOING SO, LEXINGTON INSURANCE COMPANY HAS OR MAY HAVE COMMITTED ONE OR MORE OF THE FOLLOWING INTENTIONAL ACTS OF COMMISSION AND/OR OMISSION:

1. DID NOT ATTEMPT IN GOOD FAITH TO SETTLE CLAIM;
2. STONEWALLED;
3. FAILED TO AFFIRM FULL COVERAGE OF CLAIM;
4. DID NOT FULLY AND PROMPTLY ADJUST AND INDEMNIFY THE INSURED;
5. ACTED IN RECKLESS DISREGARD FOR THE RIGHTS OF THE INSURED;
6. DID NOT PROMPTLY PAY COVERAGES OWED;
7. EXPLOITED FINANCIAL VULNERABILITY OF POLICYHOLDER;
8. FAILED TO FAIRLY AND REASONABLY EVALUATE FACTS OF LIABILITY;
9. DESIGNED A SCHEME TO NOT PAY INSURED RIGHTFUL BENEFITS;
10. FAILED TO COMPLY WITH INDUSTRY STANDARDS;
11. VIOLATED THE NORMAL PROCEDURES CALLED FOR IN THE CLAIMS MANUALS;
12. CONDUCTED INSUFFICIENT OUTCOME ORIENTED EVALUATIONS OF PROPERTY DAMAGE;
13. USED OUTCOME ORIENTED VENDORS AND EXPERTS;
14. MISREPRESENTED PERTINENT FACTS OR POLICY PROVISIONS RELATING TO COVERAGES AT ISSUE;
15. CREATED UNWARRANTED DISPUTES CONCERNING VALUE OF LOSS;
16. CREATED UNWARRANTED DISPUTES CONCERNING COVERAGES;
17. CREATED ISSUES SIMPLY TO COMPROMISE THE DUTY TO PAY THE FULL AMOUNT;
18. CONDUCTED A BIASED INVESTIGATION;
19. FAILED TO REASONABLY CONSTRUE THE LAW;
20. IMPOSED BURDENSOME DOCUMENTATION DEMANDS UPON INSURED NOT REQUIRED BY THE FACTS OR THE POLICY;
21. FAILED TO PROMPTLY NOTIFY THE INSURED OF ANY ADDITIONAL INFORMATION NECESSARY FOR THE PROCESSING OF A CLAIM;
22. FAILED TO CLEARLY EXPLAIN THE REASONS WHY REQUESTED INFORMATION WAS NECESSARY FOR THE ADJUSTMENT OF THE CLAIM.
23. MADE UNREASONABLE DEMANDS UPON POLICYHOLDER DURING CLAIM INVESTIGATION AS TO AMOUNT TO HARASSMENT

LEXINGTON INSURANCE COMPANY IN VIOLATION OF THE FLORIDA ADMINISTRATIVE CODE, FLORIDA STATUTES, AND GOOD FAITH CLAIMS HANDLING PRACTICES AND PROCEDURES, KNOWINGLY, WILLFULLY, AND WITH RECKLESS DISREGARD FOR ITS INSUREDS' INTERESTS PUT ITS FINANCIAL WELL-BEING OVER ITS INSUREDS. HAD LEXINGTON INSURANCE COMPANY ACTED FAIRLY AND HONESTLY

TOWARD ITS INSUREDS AND WITH DUE REGARD FOR THEIR INTERESTS, LEXINGTON INSURANCE COMPANY

WOULD HAVE HAD TIMELY AND PROPERLY PAID THEIR LOSS.

TO CORRECT THE ABOVE VIOLATIONS, LEXINGTON INSURANCE COMPANY MUST EXTEND COVERAGE AND PAY THE INSUREDs' out-of-pocket expenses, MINUS THE PROPER APPLICATION OF THE DEDUCTIBLE. LEXINGTON INSURANCE COMPANY MUST ALSO AGREE THAT THE INSUREDS ARE ENTITLED TO

REASONABLE ATTORNEYS' FEES AND COSTS, THE AMOUNT OF WHICH WILL BE DETERMINED BY AGREEMENT BY AND BETWEEN THE PARTIES AND/OR THROUGH COURT INTERVENTION.

**Comments**

| User Id | Date Added | Comment |
| --- | --- | --- |



THE FARBER LAW **FIRM** ■ ■ ■

October 15, 2014

Florida Chief Financial Officer as RA
200 East Gaines Street
Tallahassee, FL 32399-4201

      Re:   **Marc Wachter v. Lexington Insurance Company**

To Whom it May Concern:

The undersigned law firm has been retained to represent Marc Wachter in the above-referenced action. Accordingly, please find enclosed the following documents:

    (1)    The original summons;
    (2)    Two copies of the summons;
    (3)    A copy of every piece of paper to be served;
    (4)    A $15.00 check payable to the "Department of Financial Services;" and,
    (5)    A self-addressed stamped envelope for the Return of Service.
    (6)    Civil Remedy Notice of Insurer Violations Filing Number 268865.

Thank you for your assistance with the foregoing.

Very truly yours,

THE FARBER LAW FIRM

By: _____
    David S. Farber

Enclosures (as stated)
DSF/mmr